## H. G. MAYNARD, APPELLANT, *v.* J. NEELY JOHNSON, RESPONDENT.

An order setting aside a judgment by default is an appealable order, and if not appealed from, that order will not be reviewed after judgment on the merits.

Whether the Court was or not right in making that order in this case, quere?

When the Statute makes an instrument void or invalid it is proper to plead the statute specially.

At Common Law, a party could not plead his own fraud or violation of law as a defense to an action. But when the statute declares certain instruments

shall be void, a defendant may plead the facts which make it void, although in so doing he shows a violation of law by himself. It being the policy of the law to allow such pleas to prevent the violation of the statute.

The defendant might plead the want of the proper stamps, if such deficiency of stamps rendered the notes invalid.

The Stamp Act of Congress does not declare any notes to be invalid for want of the proper stamps, except where omitted for the purpose of evading the law. [Overruled in opinion upon re-hearing.]

APPEALED from the District Court of the Second Judicial District, Hon. S. H. WRIGHT presiding.

Facts stated in the opinion.

Opinion by BEATTY, J., full Bench concurring.

*George A. Nourse,* for Appellant.

The Court below erred in setting aside judgment by default.

There was no evidence showing the judgment by default was " taken against him through his mistake, inadvertence, surprise, or excusable neglect."

The Court failed to impose the payment of costs as a condition precedent to setting the judgment aside.

See Laws of Nevada, 1861, pp. 324–5, Sec. 68. No affidavit of merits accompanied application to set judgment aside. *Hunter* v. *Lester,* 18 How. Pr. 347.

The Court erred in overruling demurrer to answer.

The answer only avers no stamps were affixed by the maker of the note, and those afterwards affixed were not canceled.

The law only makes instruments void when the stamps are omitted " with intent to evade the provisions of this Act." Act of June 30, 1864, Sec. 158.

It is also defective in not showing that the notes were incapable of being made good by affixing the stamps before trial. Byles on Bills, 91, 14 M. & W. 873, *Bradley* v. *Bradley.*

The Revenue Act, so far as it provides for rendering instruments void, must be construed strictly. 2 Parsons on Bills and Notes, Appendix, p. vii; *Smith* v. *Spooner,* 3 Pick. 229 ; *Sprague* v. *Birdsall,* 2 Cowen, 419 ; *Young* v. *McKenzie,* 3 Kelly, 31 ; *Mayor* v. *R. R. Co.,* 7 Geo. 22.

Respondent cannot plead his own wrong in omitting the stamps. *Hughes* v. *Littlefield,* 6 Shep. 400 ; *Hollis* v. *Morris,* 2 Harring, 128 ; *Sumner* v. *Murphy,* 2 Hill S. C. 488 ; 2 Parsons on Contracts, 279 ; *Nichols* v. *Patten,* 18 Maine, 231 ; *Ayres* v. *Hewett,* 19 Maine, 281 ; *Jones* v. *Yeates,* 9 B. and C. 532 ; *Bessey* v. *Windham,* 6 Q. B. 166.

*J. Neely Johnson* and *R. M. Clarke* for Respondent.

Argued that it was the intent of the law-making power, expressed in Sec. 158, to make all instruments void which were not properly stamped.

The intent with which the stamps were omitted could only affect the enforcement of the penalty of $200 for omitting stamps. The debates in both Houses of Congress were referred to in support of these views.

Opinion by BEATTY, J.

The facts in this case are, that in August, 1864, the respondent signed three several instruments in the form of promissory notes and delivered them to the appellant. When these instruments were delivered it would seem there were no revenue stamps placed on them by the maker nor by any one authorized so to do by him. When these notes or instruments were sued on they had attached to them certain revenue stamps, but not of the requisite amount or denomination required by the Revenue Act passed in June, 1864, and which, as to stamp duties, took effect on the 1st day of August, some eleven days before the notes were executed. These stamps were never canceled by the maker of the note. It does not appear from the transcript whether they were in any manner canceled. The complaint sets out the note *in hæc verba.* At the end of the first note, which was for $2,500, payable in ninety days, are the words and figures (U. S. Rev. stamps, 42 cents) ; at the end of the second note, which was for same amount, payable in one hundred and fifty days, are the words and figures (U. S. Rev. stamps, 89 cts.) ; at the end of the third note, which was for $3,200, payable in one hundred and eighty days, were the words and figures (U. S. Rev. stamps, $1 02). None of these sums were sufficient under the law of June, 1864.

Maynard *v.* Johnson.

Suit was brought on these notes in April, 1865. The precise day when the summons was served does not appear in the transcript. But on the 1st day of May, 1865, defendant obtained the written consent of plaintiff's counsel that he should have one day further time to demur, answer, or otherwise appear in the case. The next day defendant filed a paper in the case, which is in the form of a written motion asking the Court to quash the summons and copy of *complaint* served in the case, on the ground that neither the summons nor certificate of the Clerk to the copy of complaint was stamped as required by law.

On the 4th of May plaintiff caused default and judgment thereon to be entered up by the Clerk of the Court.

On the 11th of May, about one week after judgment had been entered by default, defendant and plaintiff's counsel signed the following stipulation :

" In above action it is hereby stipulated that the motion to quash summons and to set aside default and judgment be submitted to the Judge of said Court without oral argument, he to decide the same as soon as possible."

On the 15th of May a written motion asking the Court to set aside judgment, and also an affidavit setting out facts on which motion was based, were filed by defendant.

The Court set aside the judgment by default, but refused to quash the summons. The defendant was given five days to answer. He put in his answer, admitting that he signed and *delivered* the instruments set forth in the complaint. He then sets out the facts in regard to the want of revenue stamps as we have before stated them, and winds up with a denial that he *made* or *executed* the notes or instruments sued on, or that he is indebted thereon, &c.

The plaintiff demurred to this answer ; this demurrer was overruled ; the parties went to trial ; and defendant, having proved the facts as stated in his answer, the Court gave judgment for him, and the plaintiff appeals.

The first ground taken by the appellant is, that his judgment by default was improperly set aside ; that this Court should set aside the present judgment and reinstate the former judgment in the case.

The former judgment was set aside at some period between the

15th of May and the 12th of June, 1865.    The appeal in this case was taken on the 28th of August, 1865.

It will hardly be disputed that the order setting aside the judgment by default was an appealable order. From that order the plaintiff might have appealed within sixty days, but not after. If this Court could not reverse that order upon direct appeal after the expiration of sixty days, it seems to us it would be against all principle to attempt to review it in this appeal from another and distinct judgment. We think the question as to the regularity of the order setting aside the judgment by default cannot now be adjudicated. The propriety of that order involves many questions which we have not examined. Did the filing of a motion to quash the summons bar the right to take a default until that motion was disposed of ? If not, was the belief on the part of defendant that it would have that effect sufficient excuse for his not answering or demurring, or getting his time for so doing extended ? And should the default be set aside for this reason only ? Is the affidavit of defendant in support of motion to set aside default sufficiently explicit as to merits and as to his belief that default would not, or could not, be taken until his motion was disposed of ? Does not the complaint itself show that the notes were stamped with United States stamps of insufficient amount ; that plaintiff was not entitled to any relief, and therefore justify the action of the Court below in setting aside the original judgment ? These and several other points have presented themselves to our mind in connection with the order setting aside default and judgment. But, as we think that order is beyond our control at this time, we have not examined these points so as to come to any conclusion. We are not satisfied, by any means, that an error was committed in making that order, and if there was, it is too late to correct it now.

The question as to what was the effect of omitting the proper stamps when the notes were executed, is one far more difficult to determine. The statute itself is by no means clear, and we have not been referred to any English decisions which we think are applicable to the case before us. We have no access to the English statutes on the subject of stamp duties, and therefore are not certain as to their terms ; but from recollection of what we have heretofore read, and from expressions in the English decisions

before us, we judge they contained among other provisions the following in substance :

1st. Instruments in general not properly stamped, should not be *read in evidence.*

2d. Certain instruments, such as indentures of apprenticeship, (and possibly some others) were *absolutely void* if not properly stamped when executed.

3d. Certain commissioners were authorized, in case the stamps were left off of instruments which should have been stamped when issued, to stamp the same upon payment of a penalty by the party wishing to use the instrument.

4th. Whilst the commissioners were allowed to stamp most kinds of instruments, they were expressly forbidden to stamp others, such as bills of exchange under one Act, policies of insurance under another, etc.

Our statute makes no distinction between different classes of paper. It does not declare that unstamped paper shall not be received in evidence, but that under certain circumstances it shall be " invalid and of no effect."

The English Courts have held that a special plea to an action on an instrument not properly stamped, setting up that fact, was not a good plea, because it might be properly stamped between the time of filing the plea and the trial of the cause. See Byles on Bills, marginal page 91, and the case there cited. There was doubtless some reason for this. The statute does not declare such instrument void or invalid, but says it shall not be " pleaded or given in evidence " until stamped. You cannot raise an objection to evidence by plea, and the English Courts seem to have treated the word " pleaded " as having no force or effect, being in fact mere surplusage. In such case, the defendant pleaded *non assumpsit* or *nil debit,* and where the nature of the declaration required it, might plead *non est factum.* See Chitty's Pleadings, Vol. 1, page 483. At least, such was the practice under the old rules of pleading in England. What was the practice after the adoption of the new rules of pleading under the provisions of the statute 4th of William IV, we are unable to say. But when the statute makes an instrument void, or invalid, which is the same thing, doubtless the proper way to avoid it is to plead the statute. That is, to set

out the facts, and aver that the instrument is void by reason of the statute. Such is the usual and proper defense against a note given for usury, gaming, etc., which are made void by the statute. See 1st Chitty on Pleadings, 484. And Lord Denman, an able Judge, in speaking of this very subject, says: " It is said, however, that Stamp Acts do not make a bill without a stamp void, but only forbid its being received in evidence. That may be so in some cases ; but the nineteenth section of Statute 55, Geo. III, 184, expressly prohibits the reissuing a bill of exchange which has been paid, and inflicts a penalty of £50 on any person doing it. A bill issued contrary to such prohibition is certainly void. We think upon the whole that the facts may be so pleaded."

Whilst at common law a party could not set up his own fraud or violation of law as a defense or protection to himself, there is no question that when the statute declares an instrument void for any reason, the defendant who is sued on such instrument may show the facts that make it void, although in so showing he also shows that he has been guilty of some crime, fraud or violation of a penal statute. In such case, it is the policy of the law to prevent some particular practice, such as usury, gaming, violation of the revenue law, etc. To effect that object more completely the law allows the defendant to plead and prove his own wrongful act, not so much to protect the defendant as to carry out the policy of the law in suppressing illegal acts. We have no doubt the defendant might plead and prove the want of a stamp or the proper stamps to the instruments sued on, if the facts as pleaded and proved made them invalid.

The real question in the case is, does the omission of the proper stamps from promissory notes, made since the 1st of August, 1864, and prior to March, 1855, render such notes *prima facie* invalid ?

Section 151 of the Act of June, 1864, provides that stamps of certain denominations shall be placed on various kinds of instruments, but fails to provide any penalty or forfeiture for using them without stamps.

Section 152 provides that instruments not properly stamped shall not be recorded ; that the " record " of such instruments shall be " utterly void, and shall not be used in evidence."

Section 153 provides that no instrument shall be held " invalid

and of no effect " if it has stamps of the requisite amount, although not of the particular kind or description designated for such instruments.   This section seems to have been based on the supposition that there was some part of the law preceding this section which declared instruments void which were not properly stamped.   But we can find nothing of the kind.   We are inclined to think that when the Revenue Bill was framed, section 151 did contain some provision of this sort.   That would appear to have been the most convenient place for such provision.   It would seem natural and orderly after providing in section 151 for unstamped instruments being void, to provide in section 152 that they should not be recorded; that such recordation should be invalid, and of no effect.

An examination of the debates on this bill in the " Congressional Globe " shows that there was a great variety of opinions as to the best method of enforcing the Stamp Act duties.   Some thought the law could only be properly enforced by making all instruments absolutely void that were not properly stamped when issued.   Others, that such instruments should be *invalid until* properly stamped. Some were for allowing the parties to the instrument to cure the invalidity by attaching the proper stamps at any time subsequent to the making and delivery of them.   Others, again, thought that if the stamps were not put on at the time of the execution of the instrument by the proper parties, they should only afterward be attached by a revenue officer : the parties wishing the stamps attached by the officer to pay for stamps, and a penalty of fifty dollars beyond the value of the stamps, unless he could satisfy the collector that the stamps were innocently left off at the time the instrument was executed, in which case the penalty might be remitted. But we believe that none thought the instrument ought to be available to the party holding it until it was properly stamped.   Members having these conflicting views, a great many amendments were offered on this subject.   Sometimes it was amendment to one section, and sometimes to another.

So far as we can see, the result of the various amendments has been to leave the law without any clause declaring instruments shall be invalid or void by reason of their not having stamps attached to them, except so far as they are declared void in section 158, which we shall now notice.

Maynard *v.* Johnson.

Section 158 provides that if any person shall issue any note, bill, etc., without the proper stamps, "*with intent to evade the provisions of this Act*, [he] shall for any such offense forfeit the sum of two hundred dollars, and such instrument, document, etc.,    *    *    * shall be deemed invalid, and of no effect."

Here, then, is a clear provision that instruments issued *with intent to evade the law*, shall be invalid; but there is a total absence of any provision making them invalid unless they were issued with such intent. If, then, no instrument is to be held void and inoperative except those off of which the stamps were left, *with intent to evade the law*, it appears to us the defendant in this case could not set up any defense founded on the want of the proper stamps, without pleading that such stamps were omitted with intent to evade the Stamp Act. For this reason, we think the defendant's answer is insufficient. The facts found by the Court are likewise insufficient to justify a judgment for the defendant.

We are aware that in coming to this conclusion we are making a decision which renders the Revenue Law of 1864, so far as it re- lates to stamp duties, almost a dead letter. We are in effect hold- ing that there is no adequate penalty for the violation of the law; but, if Congress has omitted to insert in the law any provision which would enforce obedience, it is not in the power of Courts to supply it. We can only enforce the law as we find it, not as we suppose Congress may have intended to make it.

In March, 1865, Congress passed an Act amending the 158th section, and providing the means of making instruments valid which were not properly stamped when issued. These amendments provide that any one having an interest in an instrument issued without the proper stamp, may have it stamped by paying. for the necessary stamps, (and in some cases interest on the amount of the stamps) and paying, in addition thereto, the penalty of fifty dollars. This may be done without inquiry as to whether the stamps were or were not left off the instrument when issued, with intent to evade the statute. If the party wishing the stamps attached makes ap- plication before the expiration of one year from the issuance of the instrument, and can prove to the satisfaction of the proper officer that they were not left off with intent to evade the law, then the proper stamps may be attached without the payment of the penalty.

Taking the section as it is amended by the Act of March, 1865, and it seems clear that Congress intended not only that all instruments requiring stamps should be held invalid when the stamps were omitted with intent to evade the law, but that in all cases where there was such an omission, it should be held and presumed that *it was* with intent to evade the law, until that presumption was rebutted by having the proper stamps attached in the manner pointed out by the Stamp Act. When the stamps are properly attached by a Revenue Collector, the whole question is settled. In other words, Congress has established the only tribunal before which the question can be tried as to whether the stamps were or were not innocently left off. We should probably hold that, under the amended law of March, 1865, that if on the trial of the cause, the instrument did not have the proper stamp, it should be held void. But this note was given long before the amendment was passed, and that amendment cannot be held to have such a retrospective action as to make a note invalid which was not so when executed and delivered.

The case must be reversed, and a new trial awarded; and it is so ordered.