JOSEPH O'NEIL, RESPONDENT, *v*. NEW YORK AND SILVER PEAK MINING COMPANY, APPELLANT.

When an application is made for a continuance on the ground of the absence of a witness, it is certainly in the discretion, if it is not the absolute duty of the Court under our statute, to deny the application when the party opposing the motion will admit that the witness, if present, would swear to the facts as set out by the party applying for the continuance.

It is not error to allow a witness to say that defendant's agent agreed to give him an order of a certain character. To say that the agent did give him an order which he passed over to another party, was not proving the contents of a writing by parol. The witness did not attempt to prove the contents of the instrument, or even that he had read or knew its contents.

When A contracts to make a certain number of bricks for B, and deliver them to him at a certain price, B to select the spot where, and the clay out of which the bricks are to be manufactured: this is a contract rather for the manufacture than sale of brick, and does not come within the 62d section of Act in relation to Conveyances, &c., requiring contracts for the sale of goods to be delivered in future to be in writing.

Usually there is an implied warranty that an article manufactured for a certain purpose is fit for the use intended. But if the manufacturer is controlled as to the manner of construction and the material used by the person ordering the article, he is only bound for skill and diligence—he is not responsible for the result.

Where an affidavit was made on the fifth of October, stating the necessary facts to justify the issuance of an attachment, but was not filed until the sixteenth, on which day the attachment was issued: *held*, this was sufficient to justify the issuance of the writ. It having been shown that the debt was past due and unpaid on the fifth, the presumption of law is, it still remained so on the sixteenth, there being no showing to the contrary.

In cases of doubtful construction of statutes, the Courts will look to the effect to be produced by one or the other construction, and give a statute such effect as will be most beneficial.

Per LEWIS, J., *dissenting*.—The provisional remedies under our code are in deroga-

tion of the common law, and the statute must be strictly followed. An affidavit that a debt is due eleven days before suit brought, is not conclusive that it is unpaid at the date of bringing the suit, and no presumption of law can be taken in lieu of the positive proof required to be offered by plaintiff's affidavit.

APPEALED from the District Court of the Eighth Judicial District, Hon. S. H. CHASE, presiding.

*W. M. Seawell*, for Appellant.

The attachment should have been dissolved. The affidavit of plaintiff shows a debt had been due from defendant eleven days previous to the issuing of the writ. It does not show any debt was due when the writ was issued.

The Court erred in refusing to grant a continuance to defendant.

The Court erred in refusing to strike out the evidence of plaintiff in relation to a written order, the order itself not being produced.

The testimony of Cobb should have been stricken out, because he speaks of a conversation he had with Catherwood about a contract he (Catherwood) had made with O'Neil. It is not shown that this contract was one made by Catherwood on behalf of defendant. The evidence does not sustain the contract as set forth in the complaint; and even if it did, is not the contract void, it being a mere verbal contract for the future delivery of goods?

Even if a lawful agreement for the brick was made, defendant was not bound to accept a worthless article.

*J. H. Hardy, W. T. Gough*, and *Boring & Brown*, for Respondents.

The order of the Court refusing to dissolve the attachment is not an appealable order, nor can it be reviewed on appeal from the final judgment, because it does not affect the merits of the case. (*Alexander* v. *Fitts et al.*, 24 Cal. 447.)

There is no defect in the affidavit in this case. It is not necessary the affidavit should be made at the moment of suing out the writ. It is sufficient if made within a reasonable time prior thereto.

The continuance was refused in strict accordance with the requirements of the statute.

The statement of Catherwood about the order was properly admitted as part of the conversation in relation to the contract for bricks.   There was no attempt to prove anything about the contents of the order, nor was it material to know what the order did or did not contain.

Although Cobb in his deposition speaks of a contract for brick made with Catherwood, yet other testimony shows it was the contract made by Catherwood as agent of defendant, and therefore was properly admitted.

This was not a contract to sell and deliver brick to defendant, but a contract to make brick at a certain yard for defendant.

The authorities make a marked distinction between contracts for the mere sale and delivery of goods, and contracts involving the expenditure of skill and labor in making articles which are the subject of contract.

This latter class of contracts is not within the 62d section of the Act in regard to Conveyances.   (*Echelburger* v. *McCreely*, 5 Harr. & Johns. 238 ; *Bronson* v. *Wiman*, 10 Barb. S. C. 406 ; *Downs et al.* v. *Ross*, 23 Wend. 270 ; *Sewall* v. *Fitch*, 8 Cowen, 215 ; *Robertson* v. *Vaughan*, 5 Sand. 1 ; 1 Chitty on Contracts, 411.)

Opinion by BEATTY, C. J., JOHNSON, J., concurring, LEWIS, J., dissenting.

The plaintiff in this case brought suit against the defendant, a corporation, for the price of certain brick alleged to have been manufactured under the provisions of a special contract with the defendant.   At the time of bringing suit the plaintiff also sued out an attachment against the defendant's property.   The suit was commenced, and the attachment sued out on the sixteenth of October, 1866, but the affidavit of indebtedness, etc., had been made on the fifth of October, some eleven days before the suit was brought.

The answer of defendant denies having entered into the alleged contract, and on the trial defendant also relied on the 62d section of " An Act in regard to Conveyances, etc.," which provides that certain contracts for the sale of chattels shall be void, unless a note or memorandum of such contract shall be made in writing, etc.

The defendant moved to quash the attachment, because it was irregularly issued on affidavit made some eleven days before the suit was commenced. This motion was overruled. The case was subsequently tried, and plaintiff had judgment. The defendant moved for a new trial, and failing in that motion, appealed to this Court from the order overruling both motions, and from the judgment.

When the cause was called for trial, the defendant's attorney submitted an affidavit showing the absence of a material witness and what he expected to prove by said witness. The affidavit was sufficient, so far as regards diligence, materiality and the likelihood of the witness being present within thirty days, the time for which a continuance was asked. The plaintiff consented to admit the absent witness would swear to the facts stated in the affidavit for continuance. Upon this admission, the Court refused a continuance, to which ruling defendant excepted.

We think, under the statute, the Court certainly had the discretion, if it was not an absolute duty, to deny the continuance under this state of facts.

The next point made by defendant is, that the Court refused to strike out a part of plaintiff's testimony, in which he states the contents of a certain written order (the order itself not being produced) given by the managing agent of the corporation to him.

There is no foundation for this exception. The testimony of plaintiff is, that the agent offered to give him an order of a certain character; that he took it and passed it to a certain party. He did not attempt to state the contents of the order. It could not be inferred from the evidence that he ever read the order. But the order was of no consequence, and whatever its contents, it did not affect the case in any way.

The evidence of W. A. B. Cobb was confirmatory of that of the plaintiff, and contradictory of that of Catherwood, a witness for defendant, and therefore was properly received by the Court.

The contract, as alleged and proved, was not a contract for the sale of brick, but a contract for the manufacture of brick for the defendant at a place and out of clay selected by defendant's agent. This case does not come within the provisions of the 62d section

O'Neil *v.* New York and Silver Peak Mining Company.

of our Act in regard to Conveyances, etc., which requires contracts for the sale of goods to be delivered in future to be in writing. There has been considerable conflict of decisions as to whether a certain class of cases should be treated as contracts of sale or contracts for the manufacture of certain articles. For instance, if a miller, engaged regularly in the manufacture of flour, should contract to deliver the next hundred barrels of flour he may manufacture, it is rather difficult to determine whether such a contract is to be treated as a contract to manufacture one hundred barrels of flour or a contract to sell one hundred barrels. Probably, if the contract did not induce any change in the conduct of the miller, but he merely proceeded with his regular business, intending, under his contract, to deliver or sell the first product of his mill, this should be treated as a sale, because the manufacturer has not changed his condition, business or circumstances on account of the contract. But if he had contracted to manufacture and deliver some peculiar article out of the regular routine of his business— for instance, a hundred barrels of kiln-dried corn meal, requiring the purchase of new material and the introduction of new appliances for the drying of the corn, this undoubtedly would, under all the decisions, be held a contract not merely for the sale but rather for the manufacture of the corn meal, and not within the statute. So too this contract to manufacture brick, not at a regular brickyard of plaintiff's, but at a spot selected by defendant, was a contract not of sale but of manufacture.

The fact that plaintiff placed in the kiln more brick than would fill his contract, made no difference. The main object and motive of the plaintiff was, if we are to believe his testimony, to carry out his contract. His having made more brick than his contract called for, whether it was for the purpose of being sure to have enough to fulfill the contract, or for the purpose of sale to others, could make no difference.

That part of Catherwood's testimony which related to a difficulty between plaintiff and Dr. Portz about fire brick was properly excluded. It has nothing to do with this case.

As a general rule, when a person undertakes to manufacture an article for a given purpose, there is an implied warrantee that it

will answer the purpose for which it is manufactured. But when the party for whom an article is manufactured directs the mode of construction, or the material out of which the article is to be made, the workman is only responsible for skill on his part. He is not responsible for a defect in material; or the result of methods of construction which he does not control. In this case the same testimony which sustains the contract shows that the place of manufacture, and the clay out of which the brick were to be made, was selected by the defendant's agent. If, then, the brick made were worthless for the purpose intended, the workman was not responsible, unless for some fault on his part. Nothing was attempted to be shown on this head. There is no complaint that the brick were not well made, but merely that they were worthless as *fire brick.* This was most probably the result of the character of the clay used, and not of defective manufacture.

The instruction, that if the jury believed the brick were worthless they should find for defendant, was properly refused for several reasons. First—There was not a particle of proof to show that they were worthless for ordinary purposes. Second—It was not by any means satisfactorily proved that the bricks were ever expected or intended to be fire bricks by the contracting parties, and if they were, it was not shown that the failure in this respect was the plaintiff's fault. The testimony of plaintiff and of Catherwood are at issue on almost every point. If we believe the plaintiff, his case was fully made out. If, on the other hand, we believe Catherwood, plaintiff had no cause of action. Plaintiff is certainly corroborated, to some extent, by the testimony of Cobb. The jury seemed to have believed plaintiff, and there is no reason for disturbing the verdict.

The only remaining point to be considered is the action of the Court below in refusing to quash the attachment. Our law authorizes the plaintiff at the time of issuing summons, or at any time afterwards, to procure an attachment upon the filing of an affidavit showing the existence of certain facts when the attachment is applied for. The question is, did the affidavit, filed on the sixteenth of October, show the existence *on that day* of the debt sued for? Appellant contends that it did not. The affidavit, says

appellant, " only shows that such a debt did exist on the fifth of October, the day it was made." " Between the fifth and the sixteenth it might have been paid."

This is a rather embarrassing question. Greenleaf, in treating on the subject of legal presumption, (see Vol. 1st of Greenleaf on Evidence, Sec. 41) says : " When, therefore, the existence of a person, a personal relation or a state of things is once established by proof, the law presumes that the person, relation or state of things continues to exist as before, until the contrary is shown, or until a different presumption is raised from the nature of the subject in question." If we are to be guided by this rule, the affidavit having shown the debt to be existing and past due on the fifth of October, the legal presumption would follow that it remained due on the sixteenth of October. If a debt was shown to exist, but not due, after the day of its falling due, there might perhaps arise a legal presumption that the debtor had complied with his contract and paid, as per agreement. But when it is once established that there has been a breach of contract and the debtor has failed to pay at the right time, we are inclined to think there is a fair legal presumption arising that the debt continues due and unpaid until something is shown to the contrary, or there is such lapse of time as to raise a contrary presumption. Eleven days would not be sufficient for such presumption.

The affidavit, aided by this legal presumption, was sufficient to make a *prima facie* case for the issuance of an attachment.

Construed with reference to the legal presumption above referred to, it did show the existence of a debt due from defendant to plaintiff at the time of the issuance of the attachment. This was a literal compliance with the terms of the statute. It is true the evidence was not so satisfactory as it would have been if the affidavit had been made simultaneously with the issuance of the writ.

The remedy by attachment is a harsh one, and it may be claimed that a plaintiff should not be allowed to avail himself of it unless he makes an affidavit showing the facts upon which he bases his application for the writ with as much certainty and precision as such facts are capable of being shown by his own testimony—that defendant should be protected from the issuance of so harsh a writ upon loose and uncertain showings.

When a Court is in doubt about the construction of a statute, it will undoubtedly look to the effect to be produced by one or the other of two constructions, and endeavor to construe the law so that its operation may be beneficial and not oppressive. If, however, we look to the beneficial effects to be produced by a construction of this statute, we think such construction as would sustain an attachment issued · under an affidavit such as was filed in this case would be decidedly more beneficial than one requiring the affidavit to be made of the same date as the application for the writ. The plaintiff is only required to make a *prima facie* case for the issuance of a writ. His own affidavit without any additional proof is sufficient. In practice it may frequently happen, and doubtless does often happen, that a plaintiff swears that defendant is in debt to him, when in fact there is no such debt existing. But we apprehend it would seldom if ever occur, that a party having a just debt against another would make the necessary affidavit for an attachment, collect the debt after the affidavit was made, and then sue out the attachment after his debt had been paid. If such a case should ever arise the defendant would still have the undertaking, which any attaching creditor has to file, to resort to for indemnity.

In large counties, such as we have in this State, it would frequently be impossible for a creditor to make the affidavit for an attachment and send it from his residence to the county seat in one day, consequently a creditor living in some of the remote parts of the State would be compelled to travel several hundred miles in order to get an attachment, if we require the affidavit to be of the same date as the writ. We think it not necessary to make such rigid requirements of attaching creditors. If the attachment is improperly issued, the defendant may have it quashed on motion.

In some of our sister States attachment is, under certain circumstances, a means adopted for giving jurisdiction to the Court over the persons of litigants. The attachment of property is a substitute for the summons or personal notification of defendant to appear and answer. In such case the Courts have always required a rigid compliance with the law to confer jurisdiction on the Court. But when the attachment is issued, not to obtain jurisdiction, but merely to enable the Court to enforce its judgment, the Courts have been

much more liberal in sustaining attachments.   In New York, under the code, it has been frequently held that even when the affidavit for an attachment was insufficient, the plaintiff would be allowed to amend after motion made to dismiss for defect in original affidavit.   It is true these rulings have not been uniform, but that is the general current of the New York authorities.   (See case of *Freeman et al.* v. *David Walter*, 13 Howard Practice Reports, 348, and cases therein collated.)

In this case the affidavit was not, as we think, insufficient; and even if it was, according to the case cited it might have been amended.   It appears to us that this rule allowing amendments to affidavits is a good one for this reason.   The attachment may be issued not only at the commencement of a suit, but at any subsequent time before judgment.   If the attachment is dismissed for informality in the affidavit, the plaintiff can immediately make a more formal affidavit and have the same goods again attached. The effect then of dismissing the attachment would be only to put the plaintiff to some costs, but not to afford any relief to defendant. Courts are always reluctant to do an act which makes costs for one party, but affords no relief to the other.

Drake on Attachment lays down the rule positively that an affidavit prior in date to the day of the issuance of the attachment is sufficient.   (See Sec. 111, and authorities therein cited.)

He also thinks that a motion to quash an attachment because of a defective affidavit should not be sustained, unless the plaintiff, after opportunity afforded, fail to make one more perfect.

The judgment of the Court below is affirmed.

I concur in the judgment.

Dissenting opinion of LEWIS, J.

I fully concur in the opinion of the Chief Justice, delivered in this case, except that portion referring to the respondent's affidavit for attachment.

In my judgment, that affidavit meets neither the letter nor spirit of the statute.   The provisional remedies of the Practice Act were unknown to the common law.   They are summary and harsh in their character, and should therefore be strictly pursued by liti-

gants resorting to them for aid.   This statute under consideration—
in certain cases—upon the mere *ex parte* affidavit of the plaintiff,
allows the property of the defendant to be summarily seized and
taken from his possession before he has an opportunity of being
heard in Court, or contesting the legality of the claim made against
him.   Whilst it may be perfectly proper to allow the creditor this
summary remedy against his debtor, it must be conceded that the
debtor should be protected from its abuse by all the safeguards
which can possibly be thrown around him.

This the Legislature has endeavored to do by requiring the party
suing out the attachment to make an affidavit of the existence of
certain facts, and to give a bond or undertaking for the protection
of the person whose property is to be attached.   The affidavit
required of the plaintiff is to some extent security to the defendant
against the issuance of the writ in cases in which it is not author-
ized.   The statute specifies the cases in which it may issue.
" First : in an action upon a contract for the direct payment of
money, which contract was made or is payable in this State, and is
not secured by mortgage, lien, or pledge upon real or personal
property ; or, if so secured, when such security has been rendered
nugatory by the act of the defendant.   Second : in an action upon
a contract against a defendant not a resident of this State."   In
this very awkward language the Legislature has pointed out the
only cases in which an attachment may issue against the goods of
the defendant.   And that it might not issue in any other case, by
the section following the one quoted above the party applying to
have it issued is required to make affidavit that the necessary facts
do exist—to show by his own oath that it is one of those cases
wherein an attachment is authorized.   Whilst this affidavit is
required, the defendant has some security against its issuance, except
in a proper case ; because if all the necessary facts be not sworn to
the attachment should not be issued, and the fear of a prosecution
for perjury will usually be sufficient to deter any false swearing as
to the existence of those facts.   Protection for the debtor is doubt-
less the sole object of requiring the affidavit from the plaintiff.   It
follows, then, that the defendant has a right to insist that the writ
shall issue in no case except it be one of those specified in the law,

and that the affidavit shall at least substantially conform to the requirements of the Practice Act.    If an affidavit be necessary at all, it is equally necessary that it substantially conform to the requirements of the law.    If the Courts can hold that any material requirement of the Act authorizing the issuance of an attachment can be disregarded, why may they not disregard all its requirements ?    If an affidavit, which fails to show the existence of some material fact which is required to be shown by it, be held sufficient to support an attachment, it seems to me that by the same reasoning it might be sustained, though there be no affidavit whatever; for if one material requirement can be dispensed with, all may be.

The question then presents itself, whether the affidavit under consideration conforms to the requirements of the Practice Act. In my opinion it does not.    Section 2, Laws of 1864–5, p. 223, declares that " the Clerk of the Court shall issue the writ of attachment upon receiving an affidavit by or on behalf of the plaintiff, which shall be filed, showing first, that the defendant *is* indebted to the plaintiff," etc.    *    *    *    *    *    " Third : that the sum for which the attachment is asked *is* an actual *bona fide* existing debt, due and owing from the defendant to the plaintiff."

This language is certainly explicit that the affidavit must show that the defendant *is* indebted to the plaintiff, and that the sum for which the attachment is asked *is* an actual *bona fide* existing debt at the time the affidavit is filed.    The affidavit must show that the defendant is indebted, and that the debt is due at the time the attachment is applied for, not that such facts existed eleven days before.    If these facts do not exist at the time the writ is applied for, the plaintiff is not entitled to it.    That they did exist eleven days before is not sufficient to authorize its issuance.    Surely no argument is necessary to sustain this proposition.    That the defendant is indebted at the time the attachment is applied for is therefore a material fact, and is indispensable to the right to have the attachment issued.    Indeed it is not more necessary for the plaintiff to swear to the existence of a debt from the defendant, than it is for him to show by his affidavit that such debt exists *at the time* he applies for the writ; because if it did not exist *at that time* he is no more entitled to the attachment than if no debt had ever existed.

Can it, then, be said that the letter or spirit of the law is met by the filing of an affidavit sworn to eleven days before the time of the application for the writ?

Is it shown by the oath of the plaintiff that the facts recited in his affidavit existed at the time he applied for the writ? Certainly not. Instead of the plaintiff's oath that the defendant is indebted to him at that time, there is nothing but a presumption of law to support it. It is quite evident that in the intermediate time between the date of the affidavit and the application for the attachment, all the grounds authorizing it may have ceased to exist. The debt may have been paid, a mortgage or pledge may have been given to secure it, or the defendant, though perhaps not a resident of the State at the time the affidavit was sworn to, may have become so before the application for the writ. Hence the necessity for showing that the proper facts exist *at the time* of the application for the attachment. If the law requires anything, it requires the person seeking the issuance of the writ to swear that the debt exists and is payable at the time he applied for the attachment. As in my opinion nothing of the kind was done in this case, the attachment was improperly issued, and should be dismissed.

But a presumption of law is invoked in aid of the affidavit in this case, and it is claimed that as the plaintiff made an affidavit showing the necessary facts eleven days before application for the writ, the law presumes a continuance of those facts until the contrary is shown. Of the correctness of this rule of evidence there can be no doubt, but it seems to me that it is impotent to assist the plaintiff in this case. There may be a presumption of law that the state of facts sworn to in the affidavit continued up to the time the attachment issued; but that does not meet the requirements of the Practice Act, which makes it incumbent upon the plaintiff to make an affidavit that they did exist at that time. It seems to me totally inadmissible to substitute a presumption of law for an affidavit which is explicitly required by the statute. Such presumption as evidence is greatly inferior to that required by the statute, and much less satisfactory than the affidavit of the plaintiff would be. I do not think the attachment should be allowed to issue upon evidence inferior in its nature to that required by the law. If the Courts

O'Neil *v.* New York and Silver Peak Mining Company.

can disregard the plain letter of the statute as to the character of evidence required to prove the existence of the facts authorizing an attachment, why may they not disregard its requirements entirely, and allow the writ to issue without evidence at all ?    It cannot be claimed that those requirements are merely directory.    Where then is the authority for departing from their strict letter ?    True, the construction which I place upon the law may in some cases produce hardship and inconvenience, but consequences should never influence a Court in its construction of a law which is not ambiguous in its phraseology.    If the Legislature has expressed its intention clearly, that intention must be followed regardless of consequences. That it is clearly expressed, it seems to me there can be no doubt.

I am aware that there are cases in New York which hold that a defective affidavit may be bolstered up by supplemental affidavits, and that in that way attachments have been maintained which could not be supported upon the original affidavit.    The plaintiff in this case, however, is not holpen by these authorities, for the reason that he made no effort or offer to cure the defect complained of.    I am also aware that it has been held in South Carolina and in Missouri that an affidavit made as this was, several days before the application for the writ, is sufficient.    I do not know, however, what the statutes may be upon which these decisions are made, and as they seem to be in direct conflict with the clear spirit and letter of our statute, I am not inclined to follow them.

These being my views on this point, I am constrained to dissent from that portion of the Chief Justice's opinion which refers to it.