# REPORTS OF CASES

### DETERMINED IN

# THE SUPREME COURT

#### OF THE

# STATE OF NEVADA

## JULY TERM, 1914

[No. 2131]

## STATE OF NEVADA, Ex Rel. GEORGE A. BART-LETT, Petitioner, v. GEORGE BRODIGAN, as Secretary of State, Respondent.

[141 Pac. 988]

1. STATUTES—EVIDENCE—ENROLLED BILL.
   The court will not look beyond the enrolled bill in the office of the secretary of state to ascertain the terms of a law.

2. CONSTITUTIONAL LAW—JUDICIAL DEPARTMENT—ENCROACHMENT ON LEGISLATIVE.
   While the courts may give effect to statutes by a fair and liberal construction of the language used, they cannot supply language to make them operative for a presumed purpose, unless from the reading of the entire act the intent is manifest.

3. EVIDENCE—JUDICIAL NOTICE—GENERAL CONDITIONS.
   Courts take judicial notice of the general conditions in a state.

4. STATUTES—CONSTRUCTION—PURPOSE OF CHANGE.
   In the construction of statutes, courts may consider the purpose of the change, sought to be effected, as it may be deduced from a consideration of the whole subject-matter.

5. STATUTES—CONSTRUCTION—PRIOR LAW.
   In the construction of statutes, courts may consider prior existing law upon the subject under consideration.

6. STATUTES—CONSTRUCTION—INTENT—MATTERS OMITTED.
   Stats. 1913, c. 144, sec. 1, divided the state into ten judicial districts and provided that for each of them judges should be elected at the general election in 1914, and, as compiled, that "for each of said districts except the Second judicial district

there shall be [elected one judge. For the Second judicial district there shall be] two judges elected"—the words in brackets being omitted from the enrolled bill. Section 3 fixed the salary of the judges in the different districts, referring to "the judge" of different districts mentioned, and section 4 provided that the Second judicial district should have two district judges, with concurrent jurisdiction and power to make rules and regulations for the transaction of business in that district. *Held,* that the manifest intent was to provide for the election of but one judge in other than the Second district; and hence that the words in brackets, necessary to give it that effect, would be read into the act in order that it might express the true legislative intent.

ORIGINAL PROCEEDING in prohibition by the State, on the relation of George A. Bartlett, against George Brodigan, as Secretary of State. **Writ ordered to issue in part as prayed for.**

*George A. Bartlett, in pro. per.*

*Geo. B. Thatcher,* Attorney-General, for Respondent.

By the Court, McCARRAN, J.:

This is an original proceeding in prohibition wherein the petitioner, as a taxpayer of the State of Nevada, seeks to prohibit the secretary of state from issuing official certificates of nomination for the office of district judge to more than one person for each political party in any of the judicial districts in the State of Nevada, except the Second judicial district.

The legislature of 1913 (Stats. 1913, c. 144) seeking to redistrict the State of Nevada, and to increase the number of judicial districts, and to provide judges therefor, passed an act, the title of which is: "An act to create judicial districts in the State of Nevada, provide for the election of district judges therein, and to fix their salary, and to repeal all other acts in relation thereto."

Section 1 of the act is as follows: "The State of Nevada is hereby divided into ten judicial districts. The counties of Storey, Douglas, and Ormsby shall constitute the First judicial district; the county of Washoe shall constitute the Second judicial district; the counties of Eureka and

Lander shall constitute the Third judicial district; the county of Elko shall constitute the Fourth judicial district; the county of Nye shall constitute the Fifth judicial district; the county of Humboldt shall constitute the Sixth judicial district; the counties of Esmeralda and Mineral shall constitute the Seventh judicial district; the counties of Lyon and Churchill shall constitute the Eighth judicial district; the county of White Pine shall constitute the Ninth judicial district; and the counties of Lincoln and Clark shall constitute the Tenth judicial district. For each of said districts judges shall be elected by the qualified electors thereof at the general election in the year 1914, and every four years thereafter, except as otherwise provided in this act, as follows: For each of said districts, except the Second judicial district, there shall be [elected one judge. For the Second judicial district there shall be] two judges elected."

The words inclosed in the brackets in the foregoing section, it is admitted, were placed there by the compiler of the Statutes of 1913. The section in the enrolled bill as signed by the governor did not contain the words inclosed in the brackets. The last sentence of section 1 of the enrolled bill, which received the signature of the governor, was as follows: "For each of said districts, except the Second judicial district, there shall be two judges elected."

The words inclosed in brackets were undoubtedly omitted from the enrolled bill by mistake.

Section 3 of the act is as follows: "The salary of each judge herein elected, or appointed to fill vacancies whenever such vacancies shall occur, shall be four thousand dollars per annum, except the judge of the Fourth judicial district whose salary shall be four thousand five hundred dollars per annum, and the judge of the Fifth judicial district whose salary shall be six thousand dollars per annum, and the judge of the Seventh judicial district whose salary shall be four thousand five hundred dollars per annum, and the judge of the First judicial district, whose salary shall be three thousand dollars per

annum; all of said salaries to be paid in equal monthly installments out of the district judges' salary fund, hereby created in the state treasury, which fund shall be supplied in the manner following, to wit:   *   *   *"

Section 4 of the act is as follows: "The Second judicial district shall be entitled to and shall have two district judges; they shall have concurrent and coextensive jurisdiction within said district, under such rules and regulations as may be prescribed by law, and they shall have power to make such rules and regulations as will enable them to transact judicial business of said district in a convenient and lawful manner."

[1] It is the desire of the petitioner, as well as that of respondent secretary of state, that a construction be placed upon this act by this court.   By a line of decisions this court has established the rule that we will not look beyond the enrolled bill in the office of the secretary of state in order to ascertain the terms of the law.   (*State of Nevada, ex rel. Chase, Relator*, v. *Rogers*, 10 Nev. 250, 21 Am. Rep. 738; *State* v. *Swift*, 10 Nev. 176, 21 Am. Rep. 721; *State* v. *Glenn*, 18 Nev. 34, 1 Pac. 186; *State* v. *Nye*, 23 Nev. 99, 42 Pac. 866; *State* v. *Beck*, 25 Nev. 68, 56 Pac. 1008; *State* v. *Howell*, 26 Nev. 93, 64 Pac. 466.)

[2] Were we inclined to modify the rule heretofore laid down and followed by this court, limiting our inquiry to the enrolled bill, the matter would present little or no difficulty; but, even were we inclined to modify that rule, such would be unnecessary in this instance.   It is the province of the courts to give effect and construction to legislative enactments at least to the extent to which the legislative intent may be made operative by a fair and liberal construction of the language used in the act.   It is not within the province of the courts to assume the powers or functions which properly belong to the legislature to the extent of either enacting laws or supplying defective enactments with language sufficient to make them operative for a presumed purpose, unless, from the reading of the entire act, the purpose and intent is made manifest, in which instance courts are warranted in

supplying sufficient language to carry out the purpose and intent of the legislature to the end that the law may be made operative for the purpose for which it was intended by the legislative body.

From the reading of sections 3 and 4 of the act under consideration, the error in section 1, made by way of omission, is manifest. Moreover, from sections 3 and 4 the purpose and intention of the legislature is made clear. In this statute, as appears from the enrolled bill, there is an apparent conflict or ambiguity, as between the provisions of the last sentence of section 1 and the provisions of sections 3 and 4. As from the enrolled bill now on file in the office of the secretary of state conflicting provisions appear, it is necessary to construe the entire act together to ascertain, if possible, the true legislative intent.

[3–5] Under the rules of statutory construction the court may consider prior existing law upon the subject under consideration and may consider the purpose of the changes sought to be effected, as the same may be deduced from a consideration of the whole subject-matter. Courts take judicial notice of the general conditions in a state, and, where the legislature has adopted a statute, the several provisions of which present an ambiguity, in endeavoring to arrive at the true legislative intent, courts will consider that the legislature in changing a prior law did so in view of conditions existing in the state that are within the common knowledge of all. Unless the language used in a statute was so clear as to leave no room for construction, this court would not be warranted in attributing to the legislature an intent to double the number of district judges in the state, thereby entailing a great additional expense upon the people for the next four years, where no possible condition existed warranting such an enactment, nor would the court be justified in assuming that it was the intention of the legislature to reduce the number of judges in the most populous district in the state from two to one and increase the number in the smaller districts from one to two.

[6] From a reading of sections 3 and 4 it is apparent that the enrolled bill, as we find it on file in the office of the secretary of state, contains an inadvertent omission of certain words in section 1 necessary to be read into the section to remove the conflict between the later sections of the act. Where, from a reading of the entire act, certain words necessary to give it complete sense have manifestly been omitted, courts, under well-established rules of construction, are permitted to read the same into the act in order that the law may express the true legislative intent.

Section 4 of the act dwells specifically with the Second judicial district. It provides for two judges in that district and also makes provision for the jurisdiction of those judges within that district, giving to them concurrent and coextensive powers. No such provision as this is made with reference to any other district created by the act. It is manifest that, had the legislature intended to provide for the election of two judges in the other districts, it would have made similar provision for the jurisdiction of such judges. Moreover, section 3 of the act bears out the legislative intent. It must be observed that in fixing the salaries of the several judges in their respective districts, and especially in the Fourth, the Fifth, the Seventh, and the First judicial district, the word "judge" is used, thereby clearly conveying the intendment of the legislature that there should be but one judge of the district court in the respective districts therein named.

Section 3 of the act conveying as it does a singularity of idea with reference to the number of judges of the district court in the districts named, and section 4 prescribing as it does especially for the jurisdiction of the judges of that district in which it is especially prescribed that two judges are to be elected, makes it manifest that the legislative intent, in the passage of the act, was to provide for the election of but one judge in the First, Third, Fourth, Fifth, Sixth, Seventh, Eighth, Ninth, and Tenth judicial districts.

It follows therefore that the writ should issue in part as prayed for.

It is therefore ordered that the writ issue restraining the secretary of state from issuing official certificates of nomination for the office of district judge to more than one person for each political party in any of the judicial districts of the State of Nevada, except the Second judicial district.

NORCROSS, J.: I concur.

TALBOT, C. J., concurring:

I concur in the foregoing order and opinion, subject to the following modification and distinction:

In the Swift, Glenn, Nye, Beck, and Howell cases, cited, it was held that the legislative journals, bills originally introduced, amendments, or parol evidence, could not be received to show that an act of the legislature, properly enrolled, authenticated, and deposited with the secretary of state, did not become a law; and that the fact that the enrolled bill was signed by the proper officers of each house, approved by the governor, and filed in the office of the secretary of state, is conclusive as to the passage of the act as enrolled, and is the only evidence thereof. By way of dictum, it was said that the court would not look beyond the enrolled bill in the office of the secretary of state in order to ascertain the terms of the law. This was aside from the questions involved as to whether the bills were conclusive as certified and signed, and did not pertain to any ambiguity or uncertainty in the legislative purpose as appearing from the terms or language of the act as approved. No question similar to the one in this case, or as to whether the bill as originally introduced may be examined in order to ascertain the legislative intent from ambiguous or conflicting expressions appearing in the bill as passed, has heretofore been presented, considered, or determined by this court. There is a difference readily discernible between the passage or validity of an act and the interpretation or construction

of its language or the ascertainment of the intention when uncertain. It becomes necessary to determine which of the two purposes, expressed or apparent from a consideration of the whole act, was the one the legislature intended should control. The fact that the bill as originally introduced provided for only one judge in the judicial districts other than the Second, and that it was not amended, may be considered as the most direct indication of the intention of the legislature in passing the act, without overturning the decisions cited, under which the act is deemed to have been regularly passed, and to be effective as certified, signed, and approved. Following these decisions holding that the enrolled bill is conclusive, we may not consider, as affecting the passage of the statute in question, anything in the legislative action back of the bill as finally certified and approved to change the words it contains. We are not to hold that the act was not duly passed, nor impeach the legislative action or purpose, but, on the contrary, are to give effect to the legislative intent. To this end, may we not consider whether by any mistake of a clerk, or oversight of the enrolling committee or officers in signing the bill, the act as introduced and intended to be passed by the legislature was different from the act as signed by the presiding officers of the senate and assembly and by the governor, and consequently that, of the conflicting or uncertain provisions of the act as approved, the one providing for one judge in each judicial district other than the Second was intended to control?

In *Blake* v. *National City Bank*, 23 Wall. 307, 23 L. Ed. 119, the Supreme Court of the United States held that it could ascertain the legislative intention by the mode, as shown by the journals, in which amendatory words were introduced into an act which appeared contradictory, and give it such construction as would carry out the intention of Congress.

In order to determine from the language of the act the real intention of the legislature, the court will take judicial notice of such facts as that the statute in force at the

time this act was passed provided for two judges in the Second judicial district, consisting of Washoe County, and for one judge in each of the other judicial districts; and of the necessity, owing to the larger population and greater volume of business, for two judges in the Second judicial district.

These conditions, and the wording of the act, make it apparent that there is a mistake or omission. If the act is reasonably susceptible of a different construction, it is not probable that the legislature, contrary to existing law and to the requirements in the different districts, would suddenly and intentionally provide that there should be two judges in the districts having less court work, and one judge in the district having more judicial business, which is the only one in the state requiring two district judges; or that the legislature intended to provide for two judges in the districts where they are least needed, and for one judge only in the district where two are most needed, and where heretofore two have been provided. The policy of the law is for the legislature to determine; but, if two conflicting intentions are expressed by the language of the statute, the court will assume that the legislature really intended that the one which is applicable, rather than the one which is contrary to, the existing law and conditions, shall prevail.

It is a rule of construction that if the intention of the legislature is not clear from a reading of the whole act, and there is an apparent conflict between the different sections, the later provision of the act will control the earlier one apparently in conflict. This especially is applicable to the conflict between section 4, which provides for two district judges for the Second judicial district, and the language at the end of section 1 that "for each of said districts, except the Second judicial district, there shall be two judges elected." (*Ex Parte Hewlett,* 22 Nev. 333, 40 Pac. 96.) Under this rule the provision in section 3 providing for salary for only one judge in specified districts other than the Second may be regarded as controlling the language in section 1

regarding two judges in each district other than the Second, and as indicating that it was the intention of the legislature to have only one judge in the districts other than the Second.

The rule is well settled that clerical omissions and apparent mistakes are to be disregarded. This rule has been applied to judgments, contracts, and various written instruments, including acts of the legislature. In *Sweeney v. Karsky*, 25 Nev. 202, 58 Pac. 813, it was held that forms of mistaken expression, such as clerical, verbal, or grammatical errors, can be set right without any special remedies by ordinary rules of construction. This court, quoting with approval from *State* v. *McElhaney*, 20 Mo. App. 587, said: "All modern courts appear to have united upon a rule, in cases at law as well as in cases in equity, that obvious clerical mistakes on the face of a written contract may be corrected with reference to the manifest intent of the parties, as gathered from the whole instrument."

In the amendment of a legislative act in Wisconsin the words "or under," inserted after the words "any female of the age of twelve years," as a mistake in engrossing instead of the words "or more," were held to be a mere clerical mistake which should be disregarded. (*State* v. *Stillman*, 81 Wis. 124, 51 N.W. 260.)

In *State* v. *Deuel*, 63 Kan. 811, 66 Pac. 1037, it was held that where a particular sentence in a statute is so ungrammatical or so punctuated as not to make sense, and the legislative intent is clearly ascertainable from the context and statutes *in pari materia*, the supreme court will put that construction on the statute intended by the legislature, and for such purpose may change the punctuation and capitalization to express such intention.

In *Holmberg* v. *Jones*, 7 Idaho, 752, 65 Pac. 563, the court said that, in order to carry out the will of the legislature which has been expressed in an imperfect way, the court will interpolate punctuation or words evidently intended to be used into the statute.

Under a statute providing that all penal judgments in the district courts may be examined, affirmed, reversed,

or modified by the supreme court, it was held that the word "penal" before judgments must be read "final," as such interpretation will render the whole chapter consistent with the intent and purpose. (*Moody* v. *Stephenson*, 1 Minn. 401.)

A statute provided that application for assessment for damages should be made in a manner "hereafter" directed, but no direction followed. It was held that the legislature intended to use the word "hereinbefore." (*Waring* v. *Cheraw*, 16 S. C. 416.)

In considering an act of Congress, it was held that, if there be a mistake apparent upon the face of the act which may be corrected by other language in the act itself, the mistake is not fatal. (*Blanchard* v. *Sprague*, Fed. Cas. No. 1517.)

In the interpretation of statutes the will of the legislature controls the courts. (*State* v. *Ross*, 20 Nev. 61, 14 Pac. 827; *Maynard* v. *Newman*, 1 Nev. 271; *Kirman* v. *Powning*, 25 Nev. 378, 60 Pac. 834, 61 Pac. 1090; *State* v. *Blasdel*, 4 Nev. 241; *Fitch* v. *Elko County*, 8 Nev. 271; *Atkins* v. *Fiber Co.*, 18 Wall. 272, 21 L. Ed. 841; *Wilkinson* v. *Leland*, 2 Pet. 627, 7 L. Ed. 542; *Webster* v. *Cooper*, 14 How. 488, 14 L. Ed. 510.)

When the provisions are not clear, the primary object is to ascertain the legislative intent. This is to be gathered from the language and from the benefits to be attained. (*Maynard* v. *Johnson*, 2 Nev. 16.)

If the law is uncertain, that construction, within the meaning of the act, should be adopted which will be least likely to produce mischief. (*O'Neal* v. *Mining Co.*, 3 Nev. 141; *Arnold* v. *Stevenson*, 2 Nev. 234.)

If from the whole act taken together the general object is apparent, any sentence which it is impossible to interpret in accord with the general purpose may be ignored. (*Roney* v. *Buckland*, 4 Nev. 45.)

If the construction of a statute in a certain way will result in manifest injustice, the language will be scrutinized to see if it will not admit of some other interpretation. (*State* v. *Kruttschnitt*, 4 Nev. 178.)

In construing an act, it is the duty of the court to

ascertain what the legislature had in view in passing it, in order to secure, if possible, the object intended by the statute. (*State* v. *Ross*, 20 Nev. 61, 14 Pac. 827; *Odd Fellows' Bank* v. *Quillen*, 11 Nev. 109.)

The meaning of the words used may be sought by examining the context and by considering the subject-matter and reason or causes which induced the legislature to act. The statute should be so construed as to avoid absurd results. (*State* v. *Dayton*, 10 Nev. 155; *Ex Parte Siebenhauer*, 14 Nev. 365.)

All parts of the same act should be considered together; and if one, by standing alone, is obscure, its meaning may be disclosed by another, and consideration of the entire act may restrict the terms of a particular clause. The purpose of the statute should not be defeated by an overstrict construction. If the will of the legislature is apparent, the court should place such a construction on the language of the act as will give it force and not nullify its manifest purpose. (*Ex Parte Prosole*, 32 Nev. 378, 108 Pac. 630.)

If the statute admits of more than one construction, that one will be adopted which will best serve to carry out its meaning and purpose. (*Bernier* v. *Bernier*, 147 U. S. 242, 13 Sup. Ct. 244, 37 L. Ed. 152; *Wayman* v. *Southard*, 10 Wheat. 1, 6 L. Ed. 253.)

If the meaning of the act is doubtful, its purpose may be considered. A construction which would render a statute inefficient, or which would cause grave public injury, should be avoided if its language indicates an intention which would justify a more reasonable interpretation. All statutes should receive such a sensible construction as will effectuate the legislative intention and if possible avoid an unjust consequence. The reason of the law in such cases should prevail over the letter. (*United States* v. *Saunders*, 120 U. S. 126, 7 Sup. Ct. 467, 30 L. Ed. 594; *United States* v. *Kirby*, 7 Wall. 482, 19 L. Ed. 278; *Oates* v. *First National Bank*, 100 U. S. 239, 25 L. Ed. 580; *Lau* v. *United States*, 144 U. S. 47, 12 Sup. Ct. 517, 36 L. Ed. 340; *Hawaii* v. *Mankichi*, 190 U. S. 197, 23

Sup. Ct. 787, 47 L. Ed. 1016; *Murray* v. *Baker*, 3 Wheat. 541, 4 L. Ed. 454.)

The real intention of the legislature, indicated by the statute considered as a whole and by the existing law and conditions, should be given effect; and the mistake, which was so apparent that the printer inserted words to supply the omission, should not be held to require the election of two district judges in the several judicial districts other than the Second, or the calling of a special session of the legislature to avoid this result.