STATE OF MARYLAND *vs.* NATHAN HENDRICKSON and others.—STATE OF MARYLAND *vs.* N. D. SMITH and others.

An Act of Assembly, releasing the sureties upon the bonds of a collector of the State taxes, from all further responsibility to the State on account of such bonds, is a mere release of claim on these bonds, and not an *appropriation,* or *use,* of the taxes levied to pay the public debt, within the prohibition of Art. 3, sec. 22, of the Constitution of the State.

The Constitution did not, by that clause of Art. 3, sec. 22, which provides that the Legislature "shall not *use* or *appropriate*" the proceeds of the State taxes, levied to pay off the public debt, "*to any purpose* until the interest and debt are fully paid," intend to deny to the Legislature the power to compromise and release claims of the State against its citizens.

APPEALS from the Circuit Court for Allegany county.

These suits were brought by the State upon the bonds of Lloyd B. Smith, as collector of the State tax for Allegany county, for the years 1854 and 1855. The defendants, the sureties on the bonds, plead that they had been released by the Act of 1858, ch. 286. This law enacts, "That the sureties on the official bonds of Lloyd B. Smith, as collector of the State taxes in Allegany county, for the year 1854 and the year 1855, be and they are hereby released from all further responsibility to the State on account of said bonds;

*Provided, however,* that the said Lloyd D. Smith, and his property, shall in no manner be released therefrom.'' The State demurred to these pleas, and the court (PERRY, J.) gave judgments, on the demurrer, in favor of the defendants, and the State appealed.

The causes were argued before LE GRAND, C. J., ECCLESTON, TUCK and BARTOL, J.

*James M. Schley,* State's Attorney for Allegany county, for the State.

By Art. 3, sec. 22, of the Constitution, it is provided, amongst other things, that the Legislature "shall not use or appropriate the proceeds of the internal improvement companies, *or of the State tax now levied,* or which may *hereafter* be levied, to pay off the public debt, *to any purpose,* until the interest and debts and debts are fully paid, or the sinking fund shall be equal to the amount of the outstanding debt." In this case the Legislature has, by the Act of 1858, ch. 286, *assumed* and exercised the power of releasing the sureties on the official bonds of Lloyd B. Smith from all responsibility to the State, by virtue and force of these bonds, for the State taxes for the years 1854 and 1855, collected and owing by said Smith to the State. If the Legislature cannot *divert* the State taxes *to any other purpose* than that expressed in the Constitution, how can it give *them away* to Smith or his sureties? To release the sureties from the payment of these taxes, is a virtual use or appropriation of them for and to a purpose not sanctioned, but *expressly forbidden* by the Constitution. Could it be pretended that the Legislature has the power to impose taxes upon the people for the purposes specified in the Constitution and laws, and also the right to allow the collectors of the several counties to *pocket* the same for their *own use* and *behoof,* and then, also, the further right to exonerate the sureties on their bonds from responsibility for the default of their principals? If not, then this case is resolved, and the Legislature, can neither release *principal* nor *interest* due upon the State taxes. It is respectfully submitted that the

Act in question does *this*, and therefore is an exercise of power not warranted by the Constitution. Why require bonds with *sureties* from collectors, if the bonds are to be *idle forms* and valueless to the State ? This court is aware of the *mode* by which collectors are appointed, and *must* see that the only safety of the State consists in a bond with the most responsible sureties. Suppose this instance of legislation be adopted as a *precedent* for the *entire State*, will the public debt and its accruing interest *ever* be paid ? Are not the provisions of the Constitution designed to *secure* its steady and prompt liquidation *practically nullified*? Is not injustice done to those parts of the State where the taxes paid, find their way into the Treasury, and are used for the purposes specified in the Constitution ? Must they not continue to pay more than their fair share? In no respect in which this case can be viewed, is it perceived that this Act of Assembly can be sustained as a rightful and constitutional exercise of power.,

The appellant relies with great confidence upon the afore-going views and asks for a reversal of the judgment.

No argument was made for the appellees.

TUCK, J., delivered the opinion of this court.

These appeals depend on the same question and may be decided together.

The State sued L. B. Smith, and his sureties on his official bonds, as collector of Allegany county, for the years 1854 and 1855. The sureties, the present appellees, pleaded payment, and that they had been released by the Act of 1858, ch. 286, from all liability on these bonds, to which latter defence there was a demurrer, and judgment having been rendered against the State, it appealed. The question submitted for our consideration is, whether that act is void in view of the 22nd sec. of Art. 3 of the Constitution ?

The argument, on the part of the State, suggests objections to this kind of legislation, which, if addressed to the consideration of the law makers, would doubtless have due weight, and this, probably, was done in the present instance; but they

affect the expediency of such Acts, and not the power of the Legislature to pass them.

We regard this Act of Assembly as a mere release of claim on these bonds, and not as an appropriation, or use of the taxes levied to pay the public debt of the State within the prohibition of the Constitution. That instrument did not, by the clause relied upon, intend to deny to the Legislature the power to compromise and release claims of the State against its citizens, and, when exercised, we must suppose there was sufficient reason for it.

*Judgments affirmed.*

(Decided March 21st, 1860.)