# IN THE MATTER OF THE ESTATE OF HENRY STICK-NOTH, Deceased.   H. H. BENCE, Public Administrator, Appellant.

CONSTITUTIONALITY OF STATUTE CONCERNING HENRY STICKNOTH'S WILL.   Where, under the act of March 4th, 1871, (Stats. 1871, 129) the unattested paper therein referred to was admitted to probate as the will of Henry Sticknoth, deceased: *Held*, that such statute was not unconstitutional, and such admission to probate not error.

PRESUMPTIONS IN FAVOR OF PROPER JUDICIAL ACTION.   Where the unattested paper purporting to be the will of Henry Sticknoth, deceased, was admitted to probate in accordance with the provisions of the act of March 4th, 1871, relating thereto, (Stats. 1871, 129): *Held*, that the presumptions were in favor of the validity of the action of the legislature and of the court below; that, as nothing appeared to the contrary, it should be assumed the deceased left no heirs, and that the state alone had an interest in preventing the probate of such will.

STATUTE VALIDATING UNATTESTED WILL.   The passage of a statute, which validates a will by dispensing with the requirement of attesting witnesses, is not the exercise of judicial power; and such a statute is not for any such reason unconstitutional.

STATUTE WAIVING ESCHEAT NOT UNCONSTITUTIONAL.   The state, through the legislature, may waive the right to insist upon a technical informality in the execution of a will as against the just and equitable claims of the legatee; in other words, it may waive its rights to an escheat by ordering that an unattested will may be admitted to probate; and there is nothing in the constitutional provision concerning the school fund, Art. XI, Sec. 3, to prevent it.

STATUTE PREVENTING ESCHEAT NO TRANSFER FROM SCHOOL FUND.   The statute providing for the admission to probate of the unattested will of Henry Sticknoth, deceased, (Stats. 1871, 129): *Held*, not to transfer to another fund, besides the school fund, the proceeds of an escheated estate.

CONSTITUTIONAL PROVISION AS TO ESCHEATS.   The constitution does not in terms vest in the school fund the title to escheats; it enjoins the application of certain resources to a specified purpose coupled with a prohibition against their diversion to other uses; but it does not prevent the legislature from determining what estates shall escheat, or from asserting or waiving a claim to derelict goods.

OBJECT OF ATTESTING WITNESSES TO WILL.   Attesting witnesses to a will are not required for the purpose of protecting the contingent and possible right of property in the state by way of escheat; but to prevent the setting up of fictitious wills against heirs and representatives.

ONLY INTERESTED PERSON CAN COMPLAIN OF VIOLATION OF VESTED RIGHTS.   Courts will not declare a statute void as infringing vested rights, except at the instance of a party whose rights are violated or impaired.

PUBLIC ADMINISTRATOR HAS NO VESTED RIGHTS IN ESCHEATED ESTATES. Where a person owning an estate died without heirs, and leaving a paper purporting to be a will, but unattested; and the legislature passed an act to validate such paper as a will, and thereby in effect waived an escheat: *Held*, that the public administrator had no vested right to the estate or its administration, and no right to be heard urging that the act was unconstitutional.

STATUTE WAIVING ESCHEAT NOT REGULATION OF PRACTICE. The statute providing for the admission to probate of the unattested will of Henry Sticknoth (Stats. 1871, 129) is not a regulation of the practice of a court of justice and does not, in that respect, violate the constitution. Art. IV, Sec. 20.

STATUTE WAIVING ESCHEAT NOT OPPOSED TO CONSTITUTION, ART. IV, SECTION 21. The statute providing for the admission to probate of the unattested will of Henry Sticknoth (Stats. 1871, 129) is not objectionable as a special act in a case where a general law could be made applicable.

OBJECTION OF WANT OF SEAL TO WILL. Where it was urged in the Supreme Court for the first time that a will, admitted to probate in the court below, was invalid for want of a seal; and the record did not purport to contain a copy of the original will or a fac-simile thereof, but only a translation: *Held*, that the objection could not be successfully urged.

SEAL TO WILL NEED NOT BE MENTIONED, NOR REMAIN. Though the statute contains an absurd and novel requirement that a will shall be sealed, (Stats. 1862, 58, Sec. 3) it is unnecessary to make mention of the seal in the instrument; nor is it necessary, if by the act of sealing the condition imposed by the statute is performed, that the seal should remain.

APPEAL from the District Court of the Second Judicial District, Ormsby County.

Henry Sticknoth died on February 10th, 1869, at Empire City, in Ormsby County, leaving about $4,000 in gold coin, and a paper written six days previously in the German language, which he intended to be his last will and testament, and which he delivered to Seibo Muntinga, the person intended under the name of Sibo to be his legatee. The translation of the paper given in the opinion of the court, and which was used in the court below and as such admitted to probate, is evidently an attempt to give it word for word in English as it was in German, with the result of making bad English out of what was good German.

It seems that Seibo Muntinga made two separate attempts to have the paper admitted to probate, one before and one after the passage of the act of March 4th, 1871, given in the dissenting opinion of Justice Whitman. Both these attempts failed, the first

because the court held the paper not to be a will, and the second because it appeared that Muntinga had previously transferred all his interest in the estate to Samuel A. Mathews. These facts, however, were not made part of the record on appeal. On March 22d, 1871, Samuel A. Mathews, the assignee of Muntinga, filed his petition to have the paper admitted to probate as the will of Henry Sticknoth. H. H. Bence, the public administrator of Ormsby County, then in charge of the estate, objected to and contested the proceedings. It was he who took this appeal from the order admitting the will to probate.

*Robert M. Clarke*, for Appellant.

I. The act of March 4th, 1871, is special in a case where a general law could be made applicable. It admits a paper to probate as a will which had previously been excluded by the court. It makes an act valid which before was void. It suspends a general law in favor of a particular individual. It creates a right and vests it in the devisee, which until then had no existence. It suspends the statute of limitations, and gives a right of action which, if it ever had an existence, was barred by time. It defeats rights to the estate of Sticknoth, which were vested in his heirs or in the State, by granting the estate to a person who had no legal or equitable rights whatever therein. In each of which particulars it is an assumption of power wholly unwarranted by constitutional law. It is forbidden for the two reasons, either sufficient — 1st, That it is special. 2d. That it is judicial. See Cooley's Const. Limitations, 90–97 ; Sedgwick's Statutory & Comst. Con. ; 19 Ill. 382 ; 16 Penn. 266 ; 2 Ark. 284 ; 3 Vt. 507 ; 10 N. Y. 374 ; 5 Pick. 64 ; 11 Penn. St. 494 ; 39 Penn. St. 137 ; 43 Penn. St. 512.

II. The court erred in admitting the paper to probate as the will of Henry Sticknoth, because the same was not sealed by the testator./ No will is valid unless " sealed with the testator's seal." (Stats. 1862, 58, Sec. 3.) The act of March 4th, 1871, in no manner cures the omission to " seal."

*Thomas Wells*, also for Appellant.

The act of 1871 does not dispense with *testate seal;* the act of 1862 requires testate seal to *every* written will; *ergo* the act of 1871 does not repeal that "part" of the act of 1862, requiring the seal of the testator, and the will is as invalid now as it ever was, admitting *pro re rata* the power of the legislature to legalize an invalid will.

This it seems to us disposes of the whole case, inasmuch as the application is not made by the party who by the act of 1871 is authorized to apply for the probate of the document in question, and the application is contested by a proper contestant—the public administrator of the proper county, who is the administrator of the estate of said deceased—on the ground *inter alia* that said document is not properly executed, and never was a will, and that the act of the legislature attempting as claimed to legalize it, is unconstitutional, and therefore void. But it may prove interesting, if *not* instructive, to notice some additional points and authorities pertinent to this case.

I. The constitution, Art. IV, Secs. 20 and 21, provides that every law regulating the practice of courts of justice in this state shall be general, and of uniform operation throughout the state. The act of 1871 is special, and regulates, though to a limited extent, the practice in a court of justice of original jurisdiction, and in this the appellate court of last resort of the state.

II. Again, the act divests a vested right, and therefore is unconstitutional. As the deceased had no heirs, the state of Nevada by escheat had a vested right in the estate. The legislature cannot divest a vested right. The moment Henry Sticknoth died without a will which, under then existing laws, could be legally probated, his heirs, if any, and if none the state, succeeded in vested right to his estate, which right could not be impaired by legislative act. 30 Cal. 138 ; 1 Kent. 511.

*William Patterson*, also for Appellant.

*T. W. W. Davies*, for Samuel A. Mathews, Respondent.

I. The legislature violated no provision of the constitution in passing the act of March 4th, 1871; such act, although to some extent special, not being in a case in which special legislation is prohibited, and being a case in which a general law could not be made applicable. The power of the legislature to pass remedial statutes and " healing acts," is not now questioned by any well considered authority. *Syracuse City Bank* v. *Davis*, 16 Barb. 188; *Underwood* v. *Lilly*, 10 Serg. & Rawle, 101; 16 Serg. & Rawle, 35; 7 Watts, 300; 20 Wend. 365; 17 S. & R. 66; 2 Peters, 627; Cooley's Const. Limitations, 370; Sedg. on Con. and Stat. Law, Sections 152, 171, 201, 677; 1 Kent, 455.

II. The court will endeavor to give the act in question such a meaning as will carry out the manifest intention of the legislature. It endeavors to settle no controversy; is no assumption of judicial power; and as is manifest from reading it, it simply proposes to relieve against technical irregularities in the execution of the will, to the extent of permitting the claimant to offer the will for probate, and authorizing the court to receive and consider the same. Every technical rule, as to the construction or force of particular terms, must yield to the clear expression of the paramount will of the legislature. The act was intended to waive any and all technical defects and irregularities in the execution of the paper. It was a deed of relinquishment on the part of the state, and an unqualified waiver as to such defects and irregularities.

III. The use and necessity of a seal has been, for a long time, done away with; and it would be in the highest degree unjust to declare this act inoperative to afford the relief intended, for the reason that no seal was affixed to the signature of the testator, in direct opposition to the paramount will of the legislature, apparent upon the face of the act.

IV. If any party had any right to come in and resist the admission of the paper to probate as a will, the state only had that right, the reasonable and legitimate presumption being that there were no claimants to the estate. The state, however, had no vested right

in the absence of a decree declaring an escheat; and when the
state waived the defects in the execution, and offered and author-
ized the claimant an opportunity to establish, if he could, the just-
ness of his claim, certainly the public administrator of Ormsby
County could not object to such a waiver on the part of the state.
*Wilkinson* v. *Leland*, 2 Peters, 662; *Gibson* v. *Mason*, 5 Nev.
311; *Clarke* v. *Irwin*, 5 Nev. 111; 2 Y. & J. 196; Cowp. 382;
3 Dow, 15; Dwarris, 632; 2 Ohio S. R. N. S. 431; 3 Coms. 479;
8 Md. 88; 9 Johns. 147; 2 Paige, 217; Douglas, 702; 2 Sch.
& Sef. 5; Story's Eq. Jurisprudence, § 753, *et seq.;* Sedgwick on
Con. and St. Law, 359; 2 Cal. 595; 6 Cal. 462; 22 Cal. 95; 26
Cal. 387; 24 Cal. 480; 32 Cal. 241.

V. The statute of limitations could not run against this claim to
the said estate until after the passage of the act, for the reason
that, until relieved by the act in question, the claimant had no legal
right to present the will for probate. 3 Parsons on Contracts, 92
*et seq.*, and cases there cited in notes; 17 Cal. 547; 30 Cal. 138.

*M. S. Bonnifield*, also for Respondent.

By the Court, GARBER, J.:

The only question presented by the record is, whether the court
below erred in admitting to probate the paper presented as the will
of the deceased, for the reason that said paper was not properly at-
tested.

The presumptions in favor of the correctness of the action of the
court below concur with the presumptions in favor of the validity of
legislative action, in authorizing us to assume that the deceased left
no heirs or distributees capable of taking; and that, consequently,
the state of Nevada alone was interested in preventing the probate.
16 Gray, 422; 16 Pick. 96.

When the statute was enacted, it was undetermined whether the
estate would vest in the state, or whether capable heirs would ap-
pear. It was also questionable whether the paper was, in all other
respects than the absence of attesting witnesses, the duly executed
will of the deceased.

The object of the legislature was to waive, so far as the state

was concerned, the technical objection that the will was unattested, saving fully all the rights of any heirs who might appear, and saving all meritorious claims of the state. The intention was to exercise the right of election with which the state was invested, accordingly as the facts, when ascertained, should render it inequitable for her to assert a merely technical claim, or proper for her to oppose the establishment of a fictitious bequest.

The question is not, whether all the provisions of this statute are valid ; but whether it is constitutional in so far as it validates the will by dispensing with the requirement of attesting witnesses. In this aspect the statute is not unconstitutional, as encroaching upon the judicial functions. This is not the exercise of judicial power ; at any rate, the state (being the only party in interest except the legatee) could, in this way, consent to or stipulate for whatever order or decision was deemed advisable. 26 Cal. 135 ; 17 Cal. 559 ; 21 Wis. 501 ; Laws of Wis. Ch. 64, A. D. 1866.

The case does not call upon us to decide, whether heirs of the deceased had any such vested right to the proceeds of the estate, as would prevent the legislature from dispensing, by a retrospective statute, with a mere formality in the mode of executing the will, the observance of which formality it might have made immaterial by a prior law. Cooley Const. Limitations, 369 *et seq.* ; *Dentzell* v. *Waldie*, 30 Cal. 144 ; 103 Mass. 408. However this may be, it is clear, I think, that there was no such vested interest in the educational fund or its beneficiaries, and that there is nothing in Sec. 3 of Art. XI of our constitution to prevent the legislature from waiving the right to insist upon a technical informality in the execution of the will, as against the just and equitable claims of the legatee. This estate consists solely of personal property, which in a technical sense never escheats. But, admitting that, by construing the constitution in the light of previous legislation, the term escheated estate can be held to embrace the movables as well as the the immovables of an intestate dying without husband, wife or kindred ; still this statute does not transfer to another fund the proceeds of an escheated estate. It is rather the prevention by the state of an unjust escheat to the state. The constitution does not, in terms, vest in the school fund the title to escheats. It

is simply an injunction upon the legislature to apply certain resources to a specified purpose, coupled with a prohibition against their diversion to other uses. If any vested right had been created by solemnly pledging these estates to educational purposes, it would have been a waste of words to annex the prohibition.

Even supposing that a vested right was intended to be created by the pledge of these estates, it cannot be admitted that it was a vested right to do wrong, or that this constitutional provision was designed to protect any claim which it would be unjust or inequitable to insist upon. Cooley, 378. It was not designed to take away from the legislature the power to determine what estates should escheat, or the election to assert or waive a claim to derelict goods. 2 B. Mon. 394–401; but to provide that, when such property does escheat, it shall be applied to certain uses. I suppose no one would deny to the legislature the power, by a prospective statute, to dispense with all formalities in the execution of wills, or to abolish escheats altogether. The absence of any specific provision, restricting the legislative power and discretion in this respect, fortifies the conclusion that the framers of the constitution did not intend to compel the state to become the involuntary and tortious recipient of funds rightfully belonging to others, but only to prohibit her from diverting to other than the designated uses such funds as, in the exercise of this prerogative, she actually obtains from the specified sources. Escheated estates go to the state simply because no other owner can be found—because no one man has a better right to them than any other man, nor so good a right as the state, the ultimate heir in trust for all the people. Attesting witnesses to a will were not required in order to protect this contingent and possible right of property in the state, but to prevent the setting up of fictitious wills against heirs and representatives. So long as the state has both the legal and beneficial title, no injustice is likely to happen; for the state has the power, always liberally exercised, to relinquish the claim. I find no warrant in the language of the constitution for a construction which would practically annihilate so necessary and useful a power. On the contrary, what must have been the intention of its framers is fully effectuated by dedicating to educational purposes all that

would otherwise have gone into the general state fund from escheated estates. That this ought to be the law, I think, is obvious. That it is so, I believe, all the authorities concur. In *The State v. Tilghman*, 14 Iowa, 474, under constitutional provisions substantially identical with ours, both as to the right of the educational fund and the prohibitions against special legislation, this very question arose and was decided. The court there say: " The defect of the argument is, that it takes for granted that the estate fell within the law of escheat, whereas this was the very question that was being controverted when the legislature passed the act aforesaid. Neither the title nor the proceeds of the property had as yet vested in the state, and the legislature may have deemed it a doubtful question whether it ever would be held to be escheated property ; and if it should be so held, it would probably work injustice to innocent parties. Hence it was thought proper, as an act of justice * * * as well as of prudence in avoiding the hazards of much costs, to make the disposition of the controversy which it did. Concerning its constitutional competency to do so, we have very little doubt under the circumstances of this case." That is, the state might relinquish to the legatee all her interest in the property. And, if she could do this directly, she could attain the same result indirectly, by declining to insist upon or by taking away a technical defense to the probate of the will. This is what our statute has done ; and this the legislature, the state alone having an interest in preventing the probate, might do. 4 Zab., N. J. 575.

In Ohio, by a statute enacted in 1847, it was provided that escheated property should be applied to the benefit of the state agricultural fund. In 1853 a statute was enacted applying such property to the exclusive support of common schools. In January, 1852, a bastard died intestate, leaving personal property, which was claimed on the one hand by legitimate children of his mother, and by the agricultural society of the state on the other hand. The bastard had survived his mother, and therefore, according to the construction theretofore placed upon a statute of 1831, his estate could not pass to the maternal line. The statute of 1853 above mentioned was passed while the estate of the bastard was in course

of settlement, and by one of its provisions prevented any escheat to the state, and gave the estate to the children of the bastard's mother. P. C. " The right to distribution was a vested right, and if it had belonged to a private person, could not have been impaired by subsequent legislation. In such case the distribution must have been made according to the law in force when the right accrued ; but it belonged to the state, and she had unlimited control over her own interests. The whole effect of the statute was to operate the relinquishment of an interest then existing, and to create a capacity in others to take it." It was further held unnecessary to decide whether the act of 1847 created a vested interest in the agricultural fund, so as to invalidate the subsequent grant to the school fund. On this point the court say : " Before either fund could be replenished, escheated property must exist. Being merely public instrumentalities, it was within the power of the legislature to take it from the one and give it to the other ; or to do what we think has been done, take it from both and give it to those better entitled by relinquishing the right of the state to the escheat. When property is found undoubtedly escheated, it will be in time to decide which of these funds can make the best claim to it." 4 Ohio State, 361 ; See also 8 Ired. Eq. 262 ; 31 Ill. 68.

The constitution of Maryland provided that the legislature should not use or appropriate certain taxes to any purpose, except one specified. Pending a suit against a collector of such taxes and his sureties, an act was passed releasing the defendants from liability for the failure of the principal to pay over the taxes collected by him. It was objected, as here, that the act was void, because in violation of the provision of the constitution fixing the destination of the sum in litigation. P. C. : " We regard this act of assembly as a mere release of claim on these bonds, and not as an appropriation or use of the taxes levied to pay the public debt of the state within the prohibition of the constitution. That instrument did not, by the clause relied upon, intend to deny to the legislature the power to compromise and release claims of the state against its citizens, and, when exercised, we must suppose there was sufficient reason for it." 15 Md. 205. By the common law, as held in the Kentucky case above cited, no meritorious or indefeasible right to this property

ever vested in the public administrator.    He would hold the intestate's property in trust for the state, the ultimate distributee, and not for his own use or benefit.    Our statute of distributions affirms this principle of the common law.    The public administrator alone has set up the unconstitutionality of this statute.    It is well settled that courts will not declare a statute void, as infringing upon vested rights, except at the instance of a party whose rights are violated or impaired.    I cannot see how this statute, so far as it has been acted upon, affects any vested right of the public administrator, or that he has any right to insist upon an escheat which the state has seen fit to relinquish.

It is argued that this is a special statute and therefore void, for two reasons : first, as regulating the practice of courts of justice ; and second, because a general law could be made applicable.    The statute is not a regulation of practice : the practice of the probate court is not altered by it.    It primarily affects the right— incidentally, if at all, the remedy.    It is a provision as to what shall constitute a valid will, rather than a regulation of the course of procedure by which the probate of the will may be obtained, or the mode in which the rights created are to be administered.

As to the second objection, whatever might be my individual opinion, I cannot distinguish this case from the case of *Hess* v. *Pegg*, *ante*.    Whether any statute which would have been judicially noticed at common law can be regarded as special under our constitution, and whether this statute would be so noticed, we do not decide.    Vid. 24 Ind. 34.

By the statute of 1862 it was thoughtlessly enacted, that no will should be valid unless sealed with the seal of the testator.    A noncompliance with this useless requirement is urged in this court — no such objection having been made below — as a reason for reversing the judgment.    The will is not before us, and consequently we do not know that the fact is as alleged.    The transcript does not purport to contain a copy of the original will, or a *fac simile* thereof; but only a translation, as follows:    " Empire the 4 Feby 69.    Sibo shall my money have when I buried am and my coat and my overalls.    This write I that it him nobody take can Henrich Sticknoth."    Even if we could infer from this, that the orig-

inal, when filed, was without a seal, it may be, nevertheless, that the testator complied with the statute, in this respect. He may have so complied by attaching a wafer, or by affixing a piece of paper with mucilage, or appending a seal to the will with a string or ribbon, or by writing on it any symbol or hieroglyphic which it was his habit to use as a seal.

Such or other compliance may have been proved to the satisfaction of the court below, although prior to the hearing and without the privity of the legatee, all traces thereof had been obliterated from the paper. It was unnecessary to make mention of the seal in the instrument. Even in case of a deed, the omission of the clause : " *in cujus rei testimonium,*" &c., where a seal is affixed, is wholly unimportant ; without it the instrument is a deed. Comyn's Dig., Title " Fait," A 2, F 2, note (*z*). A fortiori, this is true in regard to wills under our statute. If it could be held at this day that the destruction of the seal before issue joined avoids a deed, the same rule would not apply to a will, because by the act of sealing the condition imposed by the statute is performed, and for other and obvious reasons. 2 Grattan, 453 ; 1 Gallison, 70– 174 ; 3 McLean, 334.

The order and judgment appealed from should be affirmed, and it is so ordered.

By WHITMAN, J., dissenting.

This case, so far as the transcript is concerned, comes up in an unsatisfactory manner. Questions of importance, suggested by brief, cannot be considered, because they are not properly before the court. All that can be reviewed is presented by the petition, objections, and order — substantially, the judgment roll.

It is objected, however, even to such review, that no appeal lies in the case thereby made, but the order admitting the will to probate is a judgment upon the pleadings and issues of fact and law presented, and from such judgment an appeal lies to this court. The petition avers that Henry Sticknoth died upon the tenth day of February, 1869, in Ormsby County, state of Nevada, having made upon the fourth of said month a will in favor of one Seibo Muntinga. That such will was not made in strict conformity with

the statute governing such cases, but that the act of the legislature of March 4th, 1871, provided that it should be admitted to pro- bate, " the same as though it was executed in conformity with the general law." The contestant objects, among other matters which cannot be considered, for the reason before suggested, that the law is unconstitutional, for several grounds specifically assigned. The order of the court admits the will to probate. Thus, by petition and objections, the statute is directly brought in question. That statute is as follows :

" SEC. 1. The paper purporting to be the last will and testa- ment of Henry Sticknoth, deceased, is hereby declared to be as legal and valid as though the signature of the testator to the same was attested by two subscribing witnesses ; and the claimant, Siebo Muntinga, is hereby authorized to offer said paper for probate be- fore the proper court, and the same shall be considered by the court as if the signature of the testator was attested, as required by law.

" SEC. 2. Nothing in this act shall be construed as determining the issue of fact, whether said paper is the last will and testament of said deceased ; but said issue shall be submitted to and be de- termined by the proper court.

" SEC. 3. Nothing in this act shall be so construed as to pre- vent any heir or heirs of said deceased from contesting the validity of the said paper purporting to be the last will and testament of said deceased, within the time allowed by law, should any such contestant or contestants appear.

" SEC. 4. No claim of Siebo Muntinga, or of any other person, to the money or estate of said Henry Sticknoth, deceased, and no action for the recovery of the same by any person, shall be held by any court to be barred by the statute of limitations or otherwise ; provided, such claim shall be set up, or such action shall be com- menced within twelve months from the date of the passage of this act.

" SEC. 5. All acts and parts of acts heretofore passed, so far only as they conflict with the provisions of this act, are hereby re- pealed." Stats. 1871, 129.

The first section of the statute is fatal to its validity. The con-

stitution of the state of Nevada thus distributes the governmental powers: "The powers of the government of the state of Nevada shall be divided into three separate departments — the legislative, the executive, and the judicial; and no persons charged with the exercise of powers properly belonging to one of these departments shall exercise any functions appertaining to either of the others, except in cases herein expressly directed or permitted." Const. Art. III.

Now in the first section of the act referred to, the legislative branch of the government says to the judicial, that it shall consider a certain paper "as if the signature of the testator was attested as required by law." The law referred to is as follows: "No will, except such nuncupative wills as are mentioned in this act, shall be valid unless it be in writing, and signed by the testator, and sealed with his seal, or by some person in his presence, and by his express direction, and attested by at least two competent witnesses, subscribing their names to the will in the presence of the testator." Stats. 1862, 58, Sec. 3.

What this will was cannot be said, as it does not appear in the transcript. The vice of the statute, however, is in this, that it directs a specific course of judicial action in the matter of a special paper, in favor of an individual, contrary to the general course of the law. It is urged that the second section of the statute remedies this. Does it? It graciously allows the court to decide upon the issue of fact, after taking away the ordinary statutory means of arriving at such decision. Here is a clear encroachment of the legislative upon the judicial function; which, under all forms of civilized government, has always been contemned and resisted.

It is claimed, however, that in this particular case no one has the right to object. That the statute is remedial and does not trench upon vested rights; for that no party could be interested in the estate save the heirs of Sticknoth, if any, or in their absence, the state; that the rights of the former are saved by section third of the statute, and that the act is a waiver of the rights of the state.

In the view taken of the statute this argument, however sound in itself, (which point will be hereafter considered) is beside the question. The judge upon the bench, if such view be correct, could properly

have refused to obey the statute, and his action would have been sustained. The public administrator is charged with the care of all estates of intestates dying in this county, and in his official capacity represents all the world as against the party seeking to take the estate from his charge.

As the act was an infringement upon the judicial power in that it prescribed a distinct decision contrary to the general course of law in a special case, it was consequently unconstitutional and void, and thus afforded no basis for the order made. The objection could be made by the court, or any one properly before it in the case. The public administrator was so present in the line of his official duty, and has made such objection, which must be sustained.

Again, while substantially admitting that the act must fail if it interfere with vested rights, which is undoubtedly the law, respondent contends that there is no such interference ; claiming first, that the rights of heirs, if any, are protected by section three of the act ; and second, that the right of the state, the only other possible party in interest, might be waived, and has by the statute been so waived. The first position is sound ; a fair construction of the section referred to does fully protect them. A similar construction of the entire statute leads to the conclusion that the legislature intended to, and did, so far as it had power, waive all rights of the state ; but the correctness of this second point depends upon the solution of the question whether any such power exists in the legislature.

Upon the death of Sticknoth intestate his estate presently vested in some one, either in heirs, or, failing any heir, in the state of Nevada. As has been said, the rights of the former are protected, and it may be admitted if the right of the state was general the legislature might rightfully waive it, as has been attempted in this instance. But it is not so. It is provided by the constitution enumerating several sources of revenue for school purposes, that &ast;
&ast; &ast; &ast; &ast; &ast; &ast; " all estates that may escheat to the state"
&ast; &ast; &ast; &ast; &ast; " and all proceeds derived from any or all of said sources shall be, and the same are hereby, solemnly pledged for educational purposes, and shall not be transferred to any other fund for other uses." The word escheat used as quoted must be deemed to be coëxtensive with its statutory definition, which includes

personal as well as real estate, thus : " If any person shall die, or any person who may have died within the limits of what is now the territory of Nevada, seized of any real or personal estate, and leaving no heirs, representatives or devisees capable of inheriting or holding the same, and in all cases when there is no owner of such real estate capable of holding the same, such estate shall escheat to and be vested in this territory." Stats. 1861, 240, Sec. 325.

From this it will be seen that the legislature has no power over this fund, its sources or proceeds, save to use it and them as provided. It cannot even be borrowed for state purposes by diversion to other funds; much less be diminished by appropriation or surrender to a private individual. At Sticknoth's death, failing heirs, the right to his estate became immediately vested in the school fund and its beneficiaries, and the legislature could in no wise alter such disposition. So the act does interfere with a vested right, and upon this ground also must fail.

I think the order and judgment appealed from should be reversed, and therefore dissent from the opinion of the court.