[No. 1556.]

## STATE OF NEVADA, EX REL. R. S. OSBURN, RELATOR, v. H. H. BECK, T. K. HYMERS AND GEORGE H. FRAZER, RESPONDENTS.

CONSTITUTIONAL LAW—LEGISLATIVE ENACTMENT—ENROLLED BILL CONCLU-SIVE. An enrolled bill, signed by the proper officers and deposited with the secretary of state, is conclusively presumed to have been regularly enacted; and the courts cannot look to memoranda endorsed on the bill, or to the legislative journals, to determine whether the bill was read on three several days in each house, as required by article IV, section 18, of the state constitution.

IDEM—CERTAIN SECTIONS OF ACT UNCONSTITUTIONAL. Where a certain section of an act is complete and independent in itself, its validity is not affected on account of the subject of other sections of the act not being expressed in the title, as required by article IV, section 17, of the state constitution.

IDEM—IDEM. The fact that a provision in an act to disincorporate a town, fixing the boundaries thereof, may be unconstitutional, as special legislation, because varying from the general act providing that the county commissioners shall fix the boundaries of disincorporated towns, does not invalidate so much of the act as disincorporates the town.

IDEM—STATUTORY CONSTRUCTION—EFFECT OF DISINCORPORATION OF TOWN ON PENDING LITIGATION. A provision in the act disincorporating the city of Reno, that actions shall be continued by or against the town of Reno, does not prevent such suits being continued by or against the county commissioners acting for the use and benefit of the inhabitants of the town, as required by the general act relating to unincorporated cities, by proper substitution, and hence such provision is not so variant from the general act as to be special legislation.

IDEM—WHO MAY ATTACK. Courts will not consider an objection made to the constitutionality of an act of the legislature by a party whose rights it does not affect, and who has, therefore, no interest in defeating it.

ORIGINAL PROCEEDING in *quo warranto* by the State, on the relation of R. S. Osburn, against H. H. Beck, and others, Respondents. Respondents demur to information.' Sustained.

The facts sufficiently appear in the opinion.

*Torreyson & Summerfield, E. R. Dodge* and *F. H. Norcross*, for Relator:

I. The determination of this case involves the constitutionality of that certain act of the legislature of the State of Nevada, entitled "An act to disincorporate the city of Reno," approved March __ , 1899. Said act is in violation of section 8 of article VIII, in that it is an attempt to make a town out of the city of Reno by special act of the legislature and govern the same, in part at least, by laws applicable only to the city of Reno. The disincorporation of the city of Reno would necessarily restore it to a town, which, under the constitution, could only be governed by the general law relative to the government of towns or cities in this state not controlled by special incorporation act. (Constitution, secs. 1, 8, art. VIII; Gen. Stats. 2024, *et seq.*; *Comrs. Washoe Co.* v. *Griswold*, 23 Nev. 183; *State* v. *Shearer*, 23 Nev. 76.)

II. In *Commissioners* v. *Griswold*, 23 Nev. 187, the court says: "There have been two general systems for the government adopted by the legislature. One was by separate charter incorporating the inhabitants of a designated locality and authorizing the election of their own officers to administer local affairs. The other was by general law empowering the boards of county commissioners of the county under specified conditions to assume the management of the affairs and business of any town in their county." But it will be observed that the legislature has been limited by the constitution to two methods in dealing with town and city affairs, one by special charter and the other by general act, and the legislature has no more power to pass an act regulating the government of an unincorporated town in a manner different from

that provided for in the general law than it has to pass a
special act regulating the county business of a certain par-
ticular county. (*Williams* v. *Bidleman*, 7 Nev. 68; *State* v.
*Boyd*, 19 Nev. 43; *Schweiss* v. *District Court*, 23 Nev. 226.)

III.   This act is special in the following particulars:   Sec-
tion 2 fixes the boundaries of the new town of Reno, while
section 1 of the general act (Gen. Stats. 2024) provides that
the board of commissioners shall fix such boundaries; said
act provides that suits shall be continued by or against the
town of Reno, while section 1 of the general act provides
that all suits shall be by or against the board of county
commissioners acting for the use and benefit of the inhabit-
ants of the town; section 2 of said act also provides that
certain ordinances shall be and remain in force until changed
as provided for by law, but section 1 of the general act pro-
vides that the board of commissioners shall have power " to
pass or adopt all ordinances," etc.   Section 3 of said act
provides for a totally different method for the presentation
and allowance of claims against the town of Reno, than is
provided for the other towns of this state in the general act
(Gen. Stats. 2027).   Section 4 of said act provides a differ-
ent time for the levying of taxes for the year 1899 than that
provided for in the general act (Gen. Stats. 2025).

IV.   It is in conflict with art. IV, sec. 17 of the constitu-
tion, for, being "An act to disincorporate the city of Reno,"
it nevertheless proceeds, under a title suggesting or indicat-
ing but one purpose, to define and establish the boundaries
to embrace a new town; provides for continuation of legal
proceedings; perpetuates ordinances; creates a special method
for the collection of city obligations; appropriates and trans-
fers to the new town the property of the city; vacates all
levies of taxes by the municipality for the year 1899, and
commands a levy by the board of commissioners for the town
of Reno, forthwith.   None of the matters above enumerated,
all of which are contained in the last four sections of the act,
can reasonably be said to be " matter properly connected
with " the disincorporation of a city.   If one may rely on
the constitutional command, that notice of the subject of an
act is to be given in its title, then they are improperly con-
nected.

V.   The only subject the title expresses or indicates is dis-
incorporation.   Establishing a new town and providing for
its government is not "properly connected therewith" unless
indicated in the title, and it is foreign to the subject that is
mentioned in the title.   The title suggests the doing of but
one thing, and the legislative representatives being charged
with knowledge of existing law might, and probably did,
assume that if Reno were disincorporated, the people could
and would avail themselves of a town government under the
general law provided for such purposes, not supposing, nor
being put on notice by the title, that this act was providing a
special law for its government.

VI.   The history showing the hasty passage of this act, in
the absence of proper emergency, under suspension of consti-
tutional rules properly surrounding the creation of law, is
in itself a strong argument for the wisdom and rigid enforce-
ment of art. IV, sec. 17, *supra.*   (*State* v. *Silver*, 9 Nev. 227;
*State* v. *Ah Sam*, 15 Nev. 27–30; *State* v. *Halleck*, 19 Nev.
389–90; *State* v. *Hoadley*, 20 Nev. 318–19.)

VII.   The legislature must not pass a law impairing the
obligation of contracts.   (Art. I, sec. 10, Federal Constitu-
tion; art. I, sec. 15, Nevada Constitution.)   . The city of Reno
had on March 4, 1899, existed, under the act providing for
its incorporation, about two years, and had transacted, as a
municipality, a considerable volume of business, and pre-
sumably had on said date outstanding obligations and con-
tracts; indeed the disincorporation act in section 3 recognizes
the existence of city obligations and contracts by providing
a method of payment which is special to the town of Reno.
In that section the legislature exceeded its constitutional
rights, in that creditors of the city are attempted to be sub-
jected to a more rigorous or less favorable law than that
under which those city obligations and contracts were made.

VIII.   The act of March 4, 1899, being a special law for
a purpose which may be covered by, and for which purpose,
a general law existed at the time of its enactment, is in con-
travention of sections 20 and 21 of the constitution.   It is
special in that it provides that "all claims and demands
against the town of Reno shall be presented to and allowed,
audited and paid by the same officers, within the same time

and in the same manner as claims or demands against the county of Washoe are presented, allowed, audited and paid," etc. (Sec. 3 of the Act.) Under section 1965, Gen. Stats. (County Government Act), all bills against the county must be presented in six months from the time they become due, while, under said act of 1881, there is no time limit in which claims must be presented. (*Singleton* v. *Eureka Co.*, 22 Nev. 91; *Schweiss* v. *District Court*, 23 Nev. 226.)

IX. If the last four sections, or any of them, are unconstitutional, then the whole act is so, for all the sections are necessary to effect the evident purposes of the legislature, for it apparently would not undertake to disincorporate the city of Reno without complying with section 2024, Gen. Stats., *supra;* in fact, it could not do so, for in that section it is "provided, that in the case of any disincorporated town or city the boundaries *shall* be fixed at the time of such disincorporation, and the boundaries so fixed may be changed on petition," etc. In *State* v. *Comrs. Humboldt Co.*, 21 Nev. 235–40, this court said: "Where all the provisions of the act are connected in subject matter, depending on each other, operating together for the same purpose, or otherwise so connected together in meaning that it cannot be presumed the legislature would have passed the one without the other, the whole act should be declared unconstitutional."

X. In the passage of the act under discussion, were the requirements of sec. 18, art. IV, of our constitution complied with? An examination of the statute-roll indicates they were not. The history of the bill, accompanying it, shows that it was introduced in the senate on March 2d, considered read and read by title, referred to judiciary committee, reported back by committee, engrossed and by unanimous consent placed on third reading and passed by the following vote: Yeas, 12; nays, none; absent, 3; all this being done on one day. The history discloses no report of a "case of emergency" existing, nor of the suspension of the rules requiring that "every bill shall be read by sections on three several days in each house." On March 3d it was sent to the assembly; was there read by title; referred to and amended by committee; reported back and passed and returned to the senate, all on said date, without the suspen-

sion of the rules aforesaid as to the reading on three several days. " March 4, substitute adopted in senate. March 4, taken up out of order, read third time and passed: Yeas, 12; absent, 3." Is there anything in that history indicating an " emergency," or that a long-felt want for the measure, or anything else, had induced " two-thirds " of each house to dispense with the mandatory rule of sec. 18, art. IV, of the constitution, on the ground of expediency? If the law-making body may depart both from the letter and spirit of the constitution in this particular, then it may in others, and we may never know what. rules are to govern in the enactment of our laws until after they are passed. True, this court has said, in *State* v. *Swift*, 10 Nev. 176, and *State* v. *Glenn*, 18 Nev. 35, that it cannot go to the legislative journals for evidence nor receive oral testimony, or segregated documentary proof, to determine whether an act was constitutionally passed, but the contention here is that the statute-roll and all therein contained is evidence and may be considered.

XI.   The previous decisions of this court, holding that the bare signatures of the presiding officers of the senate and the assembly, of the secretary and the chief clerk thereof, and of· the governor, are conclusive evidence that the act questioned was passed with due observance of the mandatory requirements of the constitution, should be overruled. Admitting that they are fortified by the decisions of many able courts, it is submitted that their tendency is to overcome and suppress inquiry for truth by the application of purely presumptive principles. Under them the mandates of the constitution are subject to the mere caprice of the legislature. Their doctrinal feature is rooted in the common law decisions of England rendered in a country having no written constitution whatever. That they are opposed to the rule of decision adopted by an overwhelming majority of the appellate courts of America is shown by citation of decisions in appellee's brief in *Field* v. *Clark*, 143 U. S. on pages 298 to 301 of the Lawyers Coöperative Edition.

XII.   The authorities cited by respondents in support of the rule of decision that the face of enrolled bills constitute an unassailable record when signed by the proper officers relate principally to the contents of the bill and not to pro-

cedure followed in the legislative consideration of the bill.
It is believed that should the former decisions be adhered to
they should not be extended to an application beyond the
face of the bill.

XIII.   The expressed opinion of respondents, that all of
the act after the first section was a secondary consideration
of the legislature, and that its main object was the disincor-
poration of Reno, is not justified by either the phraseology
of the act or by its history.   Its history shows that the act
as it originally passed the senate, judging from its title at
that time, was of the first section only.   In the assembly a
substitute was prepared consisting of the act as it now is,
and in that form passed.   The irresistible conclusion is that
all after the first section constituted the controlling motive
in passing the act.   They being unconstitutional, the whole
bill must fall, under the rule of decision repeatedly affirmed
by this court.

XIV.   Respondents cite no authority allowing affirmative
legislation under a negative title, but rest upon their claim
that the first section is constitutional and overthrows the
allegation that they are usurpers.   This claim, as before
shown by relator, is not well taken, for the reason that the
unconstitutional sections were the motive and the induce-
ment for passing the first section, and the legislature intended
for the act to be considered as a whole, and would not have
passed it had it not been so considered.   The case of *Turner*
v. *Fish*, 19 Nev. 295, cited by respondents, is favorable to the
contention of relator, because it recognizes the rule that,
where it is apparent the legislature intended all parts of an
act as an entirety, the courts will not attempt to segregate
the different parts, but, if any is unconstitutional, the whole
act will be so declared.

XV.   The oral argument of counsel for respondents, as
well as their brief, practically admits the unconstitutionality
of all of the incorporation act except the first section.   Upon
this admission alone the entire act should be declared uncon-
stitutional, for the reason that, under all of the facts of the
proceeding, it is as clear as the noonday sun that they
induced the passage of the act as a whole.   That the title of
the act discloses nothing except the general subject of disin-

corporation, does not seem to be seriously controverted. The mandates of the constitution cry aloud that this bold aggression be rebuked by this court.

E. L. Williams, District Attorney, and A. E. Cheney, for Respondents:

I. The act of the legislature disincorporating the city of Reno, having been duly attested by the proper officers of both branches of the legislature, approved by the governor, and deposited with the secretary of state, is unimpeachable, and its existence as a law, duly passed, is conclusively established. (State v. Swift, 10 Nev. 176; State v. Nye, 23 Nev. 99; Field v. Clark, 143 U. S. 649; Harwood v. Wentworth, 42 Pac. 1025; Lafferty v. Hoffman, 99 Ky. 80; Harwood v. Wentworth, 162 U. S. 547; Carr v. Coke, 116 N. C. 223; State v. Jones, 6 Wash. 452; State v. Jones, 23 L. R. A. 340, and note.)

II. The title of the act is sufficient. (State v. Ruhe, 52 Pac. 274; State v. Comrs. of Humboldt Co., 21 Nev. 235; Ex Parte Livingston, 20 Nev. 288; State v. Ah Sam, 15 Nev. 27; 23 Am. and Eng. Ency., pp. 236, 238, 239, 241; Ackley School Dist. v. Hall, 113 U. S. 135, 142.)

III. The provisions of the act disincorporating the city of Reno, which relates to the manner and time of allowing claims against the town of Reno, are not involved in this proceeding. The question here presented is not what powers the town of Reno, or those who act for it, may exercise, but who may exercise them. If the provisions of this act are in conflict with the constitutional provisions against special legislation, then the allowance and auditing of town bills is regulated by the general law for the government of towns. (State v. Comrs. of Humboldt Co., 21 Nev. 240; State v. Westerfield, 23 Nev. 468.)

IV. Paraphrasing what was said by this court in the case last cited, at page 474, it seems to us that it cannot be reasonably inferred that the disincorporation of the city of Reno, and the method and time of allowing and auditing bills against the town, are so dependent on each other that the legislature would not have disincorporated the city without making town bills allowable in a certain time and manner. The main object of the legislature was the disincorporation

of the city of Reno, and for some reason they thought it
advisable to have the town bills allowed the same as county
bills. It is evident to our mind that the legislature would
have as readily made the town bills allowable as provided by
the general act ·for the government of towns, if it had
occurred to the members that they could not properly be
allowed the same as county bills.

V. It is contended that the title of the act in question is
negative and can contain only negative provisions. The first
section of the act, which repeals the city charter, is certainly
negative, indicated by the title, and valid without regard to
the other provisions of the act. . Being valid, it repeals the
city charter and. determines that the respondents did not
oust or usurp any of the duties or powers of the city council.
In 1883 the legislature passed an act repealing the law
relating to the salaries of the county officers of this state
(Stats. 1883, p. 78). The first section repealed the act
referred to. The second section contained a provision
exempting from its operation any county having a "duly
chartered city government." The validity of the act was
questioned upon the ground that the provisions of section 2
were unconstitutional, and this court replied by saying that,
even if that contention was well taken, the act was valid as
a repeal of the former act, there being nothing to warrant
the belief that the two sections were "so mutually connected
with and dependent upon each other, as conditions or com-
pensations for each other, that the legislature intended them
as a whole." (*Turner* v. *Fish*, 19 Nev. 295.)

VI. It being sufficient for the purposes of this proceeding
to determine that the first section of the disincorporation act,
which repealed the city charter, is a valid legislative act, the
validity of the other provisions need not be considered. "It
is a well-known rule of courts never to pass upon a constitu-
tional question unless it is clearly involved and a decision
thereon is necessary to a determination of a case." (*State* v.
*Meder*, 22 Nev. 265.) Especially is this true "where, owing
to a defect of parties before the court, any judgment that
might be entered would not be binding upon the real parties
in interest." (*State* v. *Comrs.*, 23 Nev. 247.) Whether the
county auditor has a veto power on town bills will be prop-

erly presented when he attempts to exercise that power.   He is not before the court in this proceeding, and neither he nor any claimant would be bound by any decision now rendered.

VII.   For the reasons last stated the question whether the disincorporation act violated the obligation of any contract is not before the court.   When a person representing a contract is before this court and shows that by reason of this act he has been deprived of some vested right under a contract, it will be quite time to determine if this act impairs the obligation of his contract.   (*Sticknath Estate*, 7 Nev. 223.)   That question cannot be raised by *quo warranto*.   It in no manner relates to the title of respondents to this office.   And the relator has not shown any interest in the question of its being in violation of any contractual obligations.   For such grievances the law affords other and adequate remedies, and in such cases *quo warranto* will not lie.   (High, Extr. Leg. Rem., 3d ed., sec. 617.)

By the Court, BONNIFIELD, C. J.:

This is a proceeding by information, in the nature of a *quo warranto*, to determine the right of the respondents, composing the board of county commissioners of Washoe county, to manage the affairs and business of the town of Reno, which it appears they are now doing.   The respondents demur to the information upon the ground that it does not state facts sufficient to constitute a cause of action.

An act entitled "An act to incorporate the town of Reno" was passed by the legislature (Stats. 1897, p. 50), by which act said town, with boundaries specified, was incorporated " on and after the second Monday in April, 1897, by the name and style of city of Reno."   The corporate powers of the city were vested in a city council.   On said last-named date the city government was organized, and thereafter the corporate powers were exercised by the city council.   We find among the enrolled bills filed in the office of the secretary of state an act, duly signed by the proper officers of each house of the legislature, and approved by the governor, of date March 4, 1899, entitled " Substitute for senate bill No. 67—An Act to disincorporate the city of Reno."   (Stats. 1899, p. 84.)   The body of the act is as follows:

.

"Section 1. An act entitled 'An act to incorporate the town of Reno,' approved March 8, 1897, is hereby repealed.

"Sec. 2. The land and territory now included in the city of Reno, with the boundaries as they now exist, shall be and constitute the town of Reno. All judicial proceedings by or against the city of Reno may be continued and prosecuted or defended by or against the town of Reno, and all ordinances now in force in the city of Reno shall continue in force in the town of Reno until changed as provided by law.

"Sec. 3. All claims or demands now due or owing, or which may hereafter become due or owing, from the city of Reno shall be valid claims or demands against the town of Reno, and all claims or demands against the town of Reno shall be presented to and allowed, audited and paid by the same officers, within the same time, and in the same manner as claims or demands against the county of Washoe are presented, allowed, audited and paid; and all money, property or effects of every kind and character now or hereafter possessed, belonging or owing to the city of Reno shall be immediately transferred and possessed, and belong to and be the money, property and effects of the town of Reno.

"Sec. 4. The board of commissioners of Washoe county, acting for the town of Reno, shall forthwith meet and levy taxes for the year 1899 for town purposes for the town of Reno, not exceeding the amount now authorized by law, and all levies of taxes made by the city council of the city of Reno for the year 1899 are hereby vacated and annulled.

"Sec. 5. All acts and parts of acts in conflict herewith are hereby repealed."

The respondents are charged with usurping the functions, powers, and duties of the city council of the city of Reno. The charge is based upon the theory and contention that the act disincorporating the city of Reno is unconstitutional and void. If this contention be not tenable, then there is no cause of complaint against the respondents. The contention of counsel for relator is, in substance: "(1) That the history of the bill, as disclosed by the memoranda indorsed on the back of the bill, and by the journals of the respective houses, affirmatively shows that the bill was attempted to be passed by both the assembly and the senate with all readings thereof

had upon the same day, without any pretense of deeming it a case of emergency, and dispensing with the constitutional rule by a two-thirds vote or at all."

Counsel submit "that our supreme court cannot uphold the enactment of the bill in question without emasculating the requirements of section 18 of article IV of our organic law," which section provides: "Every bill shall be read by sections on three several days in each house, unless in case of emergency two-thirds of the house where such bill may be pending shall deem it expedient to dispense with this rule; but the reading of a bill by sections, on its final passage, shall in no case be dispensed with, and the vote on the final passage of every bill or joint resolution shall be taken by yeas and nays, to be entered on the journal of each house; and a majority of all the members elected to each house shall be necessary to pass every bill or joint resolution, and all bills or joint resolutions so passed shall be signed by the presiding officers of the respective houses and by the secretary of the senate and clerk of the assembly."

Section 35 of article IV of the constitution provides: "Every bill which may have passed the legislature shall, before it becomes a law, be presented to the governor. If he approve it, he shall sign it; but if not, he shall return it, with his objections, to the house in which it originated, which house shall cause such objections to be entered upon its journal and proceed to consider it," etc.

Upon the question as to how far courts must treat an enrolled bill, authenticated by the proper officers, as conclusive of the existence of the law, including the regularity and validity of its passage, there is great diversity of opinion found among the decisions of the courts of the several states where the question has been considered. There are numerous decisions holding to the effect that an enrolled bill, signed by the proper officers, and deposited with the secretary of state, must be accepted without question, by the courts, as conclusive evidence of the existence and contents, and as having been regularly enacted by the legislature.

There is another line of decisions, holding, substantially, that it is the duty of the court to determine, when the validity of an act of the legislature is brought in question before

it, whether the legislature has, or not, complied with the constitutional provisions concerning the procedure to be followed in passing bills, and that for this purpose the court may go back of the enrolled bill, to see if the journals of both houses of the legislature show that the requirements of the constitution were obeyed in the passage of the act in question.

Counsel for relator rely upon this line of decisions. But we are of opinion that the great weight of the decided cases is against them, when the cases are considered with reference to the reasoning and logical arguments found in the opinions contained therein.

We do not consider it worth while to cite the many cases outside of the Nevada Reports which have adopted a rule contrary to that held by the courts on whose decisions the relator relies.

In *State* v. *Swift*, 10 Nev. 176, it is held: "Neither the journals kept by the legislature, nor the bill as originally introduced, nor the amendments attached to it, nor parol evidence, can be received in order to show that an act of the legislature, properly enrolled, authenticated, and deposited with the secretary of state, did not become a law." It was held further: "Where an act has been passed by the legislature, signed by the proper officers of each house, approved by the governor, and filed in the office of the secretary of state, it constitutes a record, which is conclusive evidence of the passage of the act as enrolled."

In *State* v. *Glenn*, 18 Nev. 34, 1 Pac. 186, the court said: "This court will not look beyond the enrolled bill in order to ascertain the terms of a law. The fact that it is signed by the proper officers of each house, approved by the governor, and filed in the office of the secretary of 'state, is conclusive as to the passage of the act as enrolled, and is the only evidence thereof."

In *State* v. *Nye*, 23 Nev. 99, 42 Pac. 866, the court said that the memoranda made by the secretary of the senate and clerk of the assembly on the enrolled act are immaterial; that "they are not evidence of the existence or nonexistence of any matter material to be considered in this case. The constitution makes the signing of an enrolled bill by the presiding officers of the two houses, and by the secretary of

the senate and clerk of the assembly, conclusive evidence of the passage by the legislature; and when passed, and approved by the governor, and filed in the office of the secretary of state, it constitutes a record which is conclusive evidence of the passage of the act as enrolled, and in accordance with the rules prescribed by the constitution relating to legislative procedure." In addition to the above cases, we simply note two important cases found among many other like cases in line with the Nevada decisions.

In *Field* v. *Clark*, 143 U. S. 649, 12 Sup. Ct. 495—a case involving questions of the greatest magnitude, and elaborately argued by counsel of national reputation—the court, upon a thorough consideration of the case, an extended review of authorities, and giving the most cogent reasons therefor, held: "The signing by the speaker of the house of representatives and by the president of the senate, in open session, of an enrolled bill, is an official attestation by the two houses of such bill as one that has passed congress; and when the bill, thus attested, receives the approval of the president, and is deposited in the department of state according to law, its authentication as a bill that has passed congress is complete and unimpeachable."

In *State* v. *Jones*, 6 Wash. 452, 34 Pac. 201, the court, in a clear and learned opinion, and fortified by the soundest reasoning, held: "An enrolled bill on file in the office of the secretary of state must be accepted without question by the courts as having been regularly enacted by the legislature." In the Jones case, above, the respondents' contention was that the act involved in the case was not passed in conformity to certain mandatory rules of procedure prescribed by the constitution.

The second contention is that the act is obnoxious to section 17, art. IV, of the constitution, which provides that "each law enacted by the legislature shall embrace but one subject and matter properly connected therewith, which subject shall be briefly expressed in the title." It is argued that the object of the act, as expressed by the title, was accomplished by the enactment of the first section, provided it was constitutionally passed, and that the additional sections are not germane to the subject of the act as expressed in the title. Upon the

authorities above cited, section 1 was constitutionally passed. Then the object of the act, the disincorporation of the town of Reno, was affected, and we have a complete act, independent of the additional sections.

It is contended that the act is special legislation, and therefore unconstitutional, in that section 2 establishes the boundaries of the disincorporated town, " when the general act for the government of unincorporated and disincorporated towns provides that the board of county commissioners shall fix such boundaries," and in that " it provides that suits shall be continued by or against the town of Reno, while section 1 of said general act provides that all suits shall be by or against the board of county commissioners acting for the use and benefit of the inhabitants of the town." So far as fixing the boundaries is concerned, if they can be fixed only by the board of county commissioners, then said provision of section 2 is simply useless, and not essential to the validity or efficiency of the provision disincorporating the town. As to the provisions continuing suits by or against the town, there is nothing therein prohibiting such suits being continued " by or against the board of county commissioners acting for the use and benefit of the inhabitants of the town," by proper substitution.

It is contended that the act is special legislation, unconstitutional and void, in that section 3 provides that the claims and demands named therein against the town of Reno shall be presented, allowed, audited, and paid by the same officers, within the same time, and in the same manner as claims or demands against the county of Washoe are presented, allowed, audited, and paid.

The particular contention is that the general act for the government of unincorporated and disincorporated towns does not limit the time in which claims or demands may be presented after they become due, while the time for presenting claims against the county is limited to six months after becoming due, and that, therefore, the act is special, as it limits said time, while the said general act does not, said time being limited only by the general statute of limitations, under which the limitation for the presentation of claims against towns is extended two years, instead of six months,

as in case of claims against the county; and, further, that under said general town government act the county auditor is not vested with authority to audit claims that have been allowed by the board of county commissioners against the town, and that the act in question for this reason is special and unconstitutional, and unconstitutional for the further reason that section 3 impairs the obligation of contracts.

But it does not appear by the complaint, or otherwise, that the relator is a creditor of either the town or city of Reno; that he has any claim or demand against either, to be allowed by said board, or to be audited by said county auditor. Courts will not consider an objection made to the constitutionality of an act of the legislature by a party whose rights it does not affect, and who has, therefore, no interest in defeating it. It is only when some person attempts to resist its operation, and calls in the aid of the judicial power to pronounce it void as to him, his property, or his rights, that the objection to the unconstitutionality of a legislative act can be presented and sustained. (Cooley, Const. Lim. 196, 197.)

"Courts will not declare a statute void, as infringing vested rights, except at the instance of a party whose rights are violated or impaired." (*In re Sticknoth's Estate*, 7 Nev. 223.)

The contention that the act is special legislation, and therefore void upon certain grounds specified, relating to other provisions of section 2 and 4, we think is without merit, and need not be further considered.

Finally, counsel for relator say, "the irresistible conclusion is that all after the first section constituted the controlling motive in passing the act," and upon this alleged conclusion they base an argument against the constitutionality of the act. But the legislature has declared that the disincorporation of the town of Reno was its object, its purpose, its controlling motive, in passing the act, which is emphasized by the first section repealing the act of 1897 incorporating the town. That act being repealed, and it not appearing that the respondents are exercising any powers not vested in them by law, the demurrer must be sustained, and the proceeding dismissed.

Judgment is given and ordered to be entered accordingly.