[No. 1604.]

STATE OF NEVADA, EX REL TRENMOR COFFIN, *v.*
EUGENE HOWELL, AS SECRETARY OF STATE OF THE
STATE OF NEVADA, RESPONDENT.

STATUTE—ENACTMENT—PASSAGE OVER GOVERNOR'S VETO—INITIAL BILL—SIGNA-
TURES OF PRESIDING OFFICERS. Const., art. IV, sec. 18, requires that
all bills passed by the legislature shall be signed by the presiding offi-
cers of the house and senate. Section 35 provides that, when a bill is
received by the governor, within five days of the final adjournment of
the legislature, he may prevent it from becoming a law by returning
it to the secretary of state, with his objection, within ten days after
the adjournment, but that such bill shall be referred to the succeeding
legislature, which may pass it over the veto by a two-thirds vote. A
bill was passed by both houses of the legislature, and signed by the
presiding officers, who transmitted it to the governor, who returned
it, with his objections, to the secretary of state after the adjournment
of the session: *Held*, that the failure of the presiding officers of the
succeeding legislature to sign the bill, which was passed over the veto,
rendered the law invalid, since Section 18 is mandatory, and applies to
the passage of bills over the governor's veto. (FITZGERALD, J., dis-
senting.)

ORIGINAL PROCEEDING. *Mandamus* by the State, on rela-
tion of Trenmor Coffin, against Eugene Howell, as Secretary
of State, to require the latter to furnish him a copy of a cer-
tain act of the legislature, and to include such act in the
volume containing the published laws. **Writ denied.**

The facts sufficiently appear in the opinion.

*Trenmor Coffin*, in *pro. per.*, and *James R. Judge*, for Relator:

I. Counsel quote Sections 18 and 35 of Article IV of the Constitution of Nevada.

II. The question of the proper authentication of bills which have passed the legislature and have been approved by the governor and thereby became laws, and the proof that this court will consider as to the passage, the existence, and the term of a law, has been before this court in the following cases: *Birdsall* v. *Carrick*, 3 Nev. 154; *State* v. *Swift*, 10 Nev. 176; *State* v. *Rogers*, 10 Nev. 250; *State* v. *Glenn*, 18 Nev. 34; *State* v. *Nye*, 23 Nev. 99; *State* v. *Beck*, 25 Nev. 105. See, also, *Field* v. *Clark*, 143 U. S. 649, 12 Sup. Ct. 495; *State* v. *Jones*, 6 Wash. 452.

III. The question of the proper authentication and proof of a bill passed over a governor's veto has never been before this court, but we see no reason why such a bill should be made an exception to the rule established by the decisions above cited. (*State* v. *Carrick*, 3 Nev. 156; Constitution, art. IV, sec. 35.) The bill in question as shown by the affidavit filed on the application for writ of mandate is regularly signed by the presiding officers of the respective houses, and by the secretary of the senate and clerk of the assembly of the nineteenth session of the legislature of this state, and filed in the office of the secretary of state on February 12, 1901. All public officers are presumed to do and to have done their duty and to have proceeded regularly according to the directions of the constitution, and this bill must be presumed to have been properly and regularly filed in the office of the secretary of state. The rule seems to be inflexible in this state that this court will not look beyond the enrolled bill. It cannot be presumed that a bill found on file in the office of the secretary of state, regularly enrolled and properly signed by officers of the senate and assembly, as required by the constitution, has not become and is not a law.

IV. The memoranda on the back of a bill, commonly known as the history of the bill, are not evidence of any material matter to be considered in this case. (*State* v. *Nye*, 23 Nev. 99.) Without looking at the memoranda on the back of the bill or otherwise going behind the enrolled

bill, this court cannot determine whether the bill became a law.

V.   "By receiving a two-thirds vote of both houses of the legislature after it has been vetoed and returned by the governor," or "by a failure, on the part of the governor, to return it to the house where it originated, within five days after its reception by him whilst the legislature is in session, or within ten days after the adjournment of that body."   In both of these cases, the act becomes a law without the signature or approval of the executive.   However, it could make no difference in which of these two ways the bill became a law.   The enrolled bill in the office of the secretary of state is the law.

VI.   There is no conflict, nor necessity for construction between Sections 18 and 35 of Article IV of the constitution. (*State* v. *Denny*, 118 Ind. 449; *City of Evansville* v. *State*, 118 Ind. 426; *H. & T. Co.* v. *Odum*, 53 Tex. 351; *Ex Parte Wall*, 48 Cal. 314.)   Section 18 provides how bills shall be passed through the respective branches of the legislature in the first instance, and how they shall be authenticated after having received a majority of the votes of all the members of each house, respectively.   Section 35 provides that every bill which has passed both houses according to the provisions of Section 18 shall, before it becomes a law, be presented to the governor, and also provides three ways by which such bill may become a law, after it has been presented to the executive: First—By receiving the approval and signature of the governor.   Second—By receiving a two-thirds vote of both houses of the legislature after a veto by the governor. Third—By remaining in the hands of the governor without action for five days while the legislature is in session, or for ten days after the final adjournment of that body.   The constitution, however, does not direct what the governor shall do with an enrolled and authenticated bill after he has approved it; nor how it shall be ascertained or determined that a bill has received a two-thirds vote of both houses, after it has been vetoed and returned by the governor; nor how the fact shall be ascertained or established that a bill has remained in the hands of the governor without his action thereon for five days during the session of the legislature, or for ten days

after the final adjournment of that body; nor how a bill after it has become a law in any of the three modes provided shall find its way into the office of the secretary of state. The constitution rather presumes and assumes that where a plain and simple duty is enjoined upon a high official of the state, he will find some plain and simple way of performing it. "The constitution does not deal in details." (18 Nev. 42.)

*A. E. Cheney, T. C. Coogan, E. R. Dodge*, and *William Woodburn*, Attorney-General, for Respondent:

I. It is conceded that a bill in order to become a law at the session at which it is introduced must have the signature of the officers named in the constitution, and that the enrolled bill so certified is the only evidence that it has been legally enacted. (*State* v. *Swift*, 10 Nev. 176; *State* v. *Rogers*, 10 Nev. 250; *State* v. *Glenn*, 18 Nev. 34; *State* v. *Nye*, 23 Nev. 99; *State* v. *Beck*, 56 Pac. 1008.) It is the duty of these officers to certify to the correctness of all laws that have been enacted. (*State* v. *Rogers*, 10 Nev. 250, 261.) The various objections urged by relator are fully answered in many cases. (See, especially, *Scarborough* v. *Robinson*, 81 N. C. 420.) Section 18 of article IV of the constitution declares that bills shall be signed by certain officers named. Its provisions are held mandatory, and their signatures are the only evidence that the law has been regularly enacted. Section 35 of the same article relates to a different subject; it refers exclusively to what action is necessary in order to pass a bill over a governor's veto. It prescribes what shall be done, not what shall constitute evidence that it has been done. It is entirely consistent with Section 18. In determining whether vetoed bills passed by a succeeding legislature are intended by the constitution to be signed by the officers named in Section 18, the following rules of construction are deemed pertinent: First, both sections are presumed to be consistent. (Endlich on Interpretation, 40, 182.) Both must be given force unless irreconcilably repugnant. (*State* v. *Donnelly*, 20 Nev. 216.) That which is clear must prevail over that which is obscure. (Endlich on Interpretation, 183.) Courts will not raise an exception not found in the act itself or necessary to its reasonable enforcement. (Endlich on Interpretation, 17.) That

construction will be adopted which is least likely to produce mischief, and which will afford the most complete protection to all parties. · (*Arnold* v. *Stevenson*, 2 Nev. 234; *Haydon* v. *Supervisors*, 2 Nev. 371; *O'Neil* v. *N. Y. Mg. Co.*, 3 Nev. 141:) "It is a rule of law, well established, that where questions involved are purely political, and depend upon the construction to be given to provisions of doubtful interpretation, the court will not only give great consideration to the construction given by the political departments of the state, but will generally follow such construction implicitly." (*State* v. *Grey*, 21 Nev. 378, 383, 387.) The rule that the court will not look beyond the enrolled bill to determine whether a law has been enacted in a constitutional manner is confined to the fact of its passage by the legislature, and not to the time when it became a law. The court is limited as to what evidence it shall receive only so far as the constitution has restricted it; and as that restriction applies solely to the question as to what shall be competent evidence of the fact of its passage, the court may examine the journals of both houses, or any other record suitable and proper to ascertain the time that it became a law, and in this way determine whether a bill, properly attested by the officers of the legislature, but without the governor's signature, became a law by expiration of time or otherwise. (*Gardner* v. *The Collector*, 6 Wall. 499, 511; *Field* v. *Clark*, 143 U. S. 678.)

II. The two sections relating to this subject matter—Sections 18 and 35—are found in Article IV, which is devoted to the legislative department. They relate to the same subject matter, and, under the familiar rule, should be read and construed together. As we have before stated, it was conceded on the oral argument that all bills in order to become a law must be "signed by the presiding officers of the respective houses, and by the secretary of the senate and clerk of the assemby"; but it is contended that this plain mandate of the constitution has no application to bills which passed the legislature over the objections of the governor. If it is essential that such an attestation must be had to show that the constitutional requirements in the one instance have been complied with, *a fortiori* is it necessary to show the constitutional

requirements in case of the passage of bills that have met with executive objections.

III.    It was urged by our learned opponent that Section 18 did not in express terms call for this constitutional attestation; but, as we have shown, the two sections read together call for it, and the rules of construction and the reasons given by the Supreme Court of the United States.    In *Field* v. *Clark*, 143 U. S. 649, Justice Harlan, speaking for the court, said: "Although the constitution does not expressly require bills that have passed Congress to be attested by the signatures of the two houses, usage, the orderly conduct of legislative proceedings, and the rules under which the two bodies have acted since the organization of the government, require that mode of authentication."

IV.    The construction for which we respectfully contend accords with the practice that has prevailed in our state since the adoption of the constitution.    In the statutes, from 1864 down to those published in 1899, there are to be found very many instances.    If the court will look at the statutes first referred to, at pages 99, 109, 143, 147, 183, 331 and 399, they will find evidences of this practice, and by referring to the session of 1899, at page 124, they will find still another.    The effect of such a long-continued, contemporaneous construction should be considered by the court and should be given great weight.    Our own supreme court has followed this rule and forcibly stated it in *State* v. *Glenn*, 18 Nev. 35, and *State* v. *Grey*, 21 Nev. 378.

V.    The court has been referred to rulings made in Indiana that are claimed to be contrary to the construction contended for by respondent.    This is not the case; indeed, the decisions cited sustain our view.    In that state, the constitution, section 14, article V, provides that, if a bill is passed over the governor's objections, "it shall be a law," not, as in our constitution, that "it shall become a law."

By the Court, MASSEY, C. J.:

The relator by this action seeks to compel the respondent, as secretary of state, to furnish him a duly certified copy of that certain act entitled "An act to regulate the payment of losses sustained by holders of full paid up fire insurance

policies," deposited and filed in the respondent's office on the 12th day of February, 1901, and to further compel respondent to include said act in the volume containing the published laws enacted by the twentieth session of the legislature of this state.

The controlling facts set up in the petition, and which are admitted to be true, are that the above-entitled act was regularly passed by the legislature of this state at its nineteenth session, regularly signed by the proper officers of the two houses thereof, and presented to the governor of the state at a time less than five days before the final adjournment of said session; that within ten days after the adjournment the governor filed said act, with his objections thereto, in the office of the respondent; that thereafter and in due time the respondent regularly laid said act, together with the objections of the governor, before the twentieth session of the legislature of Nevada, and the same was regularly reconsidered and passed by a vote of more than two-thirds of the members elected to each house thereof, notwithstanding the governor's objections, and was filed in the office of the respondent on the 12th day of February, 1901; that the act when so filed was not signed, and has not since been signed, by either of the presiding officers of the senate or assembly of the twentieth session of the legislature, nor by the secretary of the senate or clerk of the assembly of said session.

The respondent contends that the act is not a law without the attestation of the proper officers of the twentieth session of the legislature, and bases his refusal to comply with relator's demands upon that fact. The question presented by this contention is the only one to be considered, and it must be determined by the construction placed upon Sections 18 and 35 of Art. IV of our constitution. While the question is a new one, and has come before this court in this proceeding for the first time, yet the construction of Section 18 has been repeatedly before this court. In all the cases involving a construction of said Section 18 it has been invariably held that the last clause of the section, requiring the signatures of the officers named therein, is mandatory, and that the enrolled bill so authenticated is the only and conclusive evidence that it has been legally enacted. (*State* v.

*Swift,* 10 Nev. 176; *State* v. *Rogers,* 10 Nev. 250; *State* v. *Glenn,* 18 Nev. 34, 1 Pac. 186; *State* v. *Nye,* 23 Nev. 99, 42 Pac. 866; *State* v. *Beck,* 25 Nev. 68.)

It is not necessary to discuss the reason of the rule, or quote from the opinions the reasons given. The question was exhaustively treated in *State* v. *Swift, supra,* in which the authorities from all sources were collected, analyzed, and explained, and approved or disapproved.

In *State* v. *Glenn* the rule laid down in *State* v. *Swift* was approved, and Justice Hawley, speaking for the court, declared that "the signing of the bill by the officers designated in the constitution is absolutely essential to its existence as a law."

So well settled is this rule in this state that the court as late as 1899, when asked to modify it in *State* v. *Beck,* declined to make any modification, and upon full consideration declared that the great weight of the decided cases, considered with reference to the reasoning and argument, supported the rule. Shall we, then, apply the mandatory requirement of Section 18, relating to the attestation of bills, to acts which have been vetoed by the governor, and by the provision of said Section 35 are required to be laid before the next legislature for reconsideration, and have passed over his veto? This is the precise question.

Section 35 reads as follows: "Every bill which may have passed the legislature, shall, before it becomes a law, be presented to the governor. If he approve it, he shall sign it; but if not, he shall return it with his objections to the house in which it originated, which house shall cause such objections to be entered upon its journal, and proceed to reconsider it. If, after such reconsideration, it again pass both houses by yeas and nays by a vote of two-thirds of the members elected to each house, it shall become a law, notwithstanding the governor's objections. If any bill shall not be returned within five days after it shall have been presented to him (Sundays excepted) exclusive of the day on which he received it, the same shall be a law in like manner as if he had signed it, unless the legislature, by its final adjournment, prevents such return, in which case it shall be a law, unless the governor within ten days next after the adjournment

(Sundays excepted) shall file such bill, with his objections thereto, in the office of the secretary of state, who shall lay the same before the legislature at its next session, in like manner as if it had been returned by the governor; and if the same shall receive the vote of two-thirds of the members elected to each branch of the legislature, upon a vote taken by the yeas and nays to be entered upon the journals of each house, it shall become a law."

It will be observed that Sections 18 and 35 are found in the same article—the article devoted to the legislative department of the state government—and, under the familiar and well-established rule, when construction is necessary should be read and construed together.

It is claimed by the relator that notwithstanding the mandatory requirements of Section 18, relating to the attestation by the officers of the respective houses as applied to bills which become laws with or without the governor's approval, such mandatory requirement can have no application to bills which are passed over the governor's objections at the next session of the legislature, for the reason that the provisions of Section 35 authorize the court to go to the journals of the respective houses for the evidence of the constitutional requirements of its enactment and existence as a valid law.

For the same reason and by the same logic it could be as well said that the requirement of Section 18, relating to the signatures of the proper officers to bills which are laws with the governor's approval, or without his approval by lapse of time, is not mandatory, and therefore not essential to the existence of the law, as Section 18 contains the provision that the "vote on every bill or joint resolution shall be taken by yeas and nays to be entered on the journals of each house, and a majority of all members elected to each house shall be necessary to pass every bill or joint resolution."

If we so hold, we place the framers of our constitution in the anomalous position of requiring acts passed by a mere constitutional majority to be attested by the signatures of the chief officers of the legislature, as the only and conclusive evidence of their enactment, and in the same article, treating of the same subject, permitting the existence of another act which meets the disapproval of a coordinate branch of the

government, exercising a constitutional power over legislation, and which act must again be considered by the legislature, and receive more than a majority of the members elected to each branch thereof, in order to overcome such disapproval, to rest upon a record which may be, as pointed out by Justice Beatty in *State* v. *Swift,* so uncertain, inaccurate, and incomplete as to unsettle the entire statute law of the state.

The relator cites two cases decided by the Supreme Court of Indiana (*City of Evansville* v. *State,* 118 Ind. 426; and *State* v. *Denny,* 118 Ind. 449), which he claims support his contention. While there are many points of similarity between the cases cited and the case at bar, we are of the opinion that the constitutional provisions of the State of Indiana are such as to easily distinguish those cases from the one we are considering, and render the application of the rule of construction adopted by that court inapplicable here. Section 14 of the constitution of Indiana, which corresponds to our Section 35, is found in Article V of the Indiana constitution. That article is devoted to the duties and powers of the executive department of the government. Section 25 of the Indiana constitution, which corresponds to our Section 18, is found in Article IV of the Indiana constitution, which is devoted to the legislative department of that government.

Both sections under consideration in this proceeding are incorporated in the same article, and while this difference may not be very material, it shows at least that the framers of our constitution had but one subject under consideration, and fully treated the matter in the one subject as closely connected and related before they passed to some other subject.

It will be further observed that in the reported case Section 14 of the Indiana constitution is not set out in its entirety.

That provision which relates to the filing of a bill with the governor's objection thereto, with the secretary of state, and its subsequent submission by that officer to the next legislature, is omitted.

The omitted provision reads as follows: "If any bill shall not be returned by the governor within three days (Sunday excepted) after it shall have been presented to him, it shall

be a law without his signature unless the general adjourn'ment shall prevent its return, in which case it shall be a law, unless the governor within five days next after such adjournment, shall file such bill, with his objections thereto, in the office of secretary of state, who shall lay the same before the general assembly at its next session in like manner as if it had been returned by the governor. But no bill shall be presented to the governor within two days next previous to the final adjournment of the general assembly."

If the bills considered by the court in the Indiana cases had been passed over the governor's objections by the general assembly at its next session, as was the case here, we cannot say, under the provisions above quoted, what would have been their fate. There is also a very marked and sharp distinction to be made from the use of the language in our constitution. In the Indiana cases cited the court places great stress upon the language used in the provisions of the constitution applying to the facts before it, which involved the constitutionality of acts passed over the governor's veto at the same session of the general assembly in which the act originated. The constitution provides in terms that if after such reconsideration a majority of all the members elected to each house shall agree to pass or approve, as the case may be, "it shall be a law."

The corresponding provision of our constitution provides that, in the case covered by the Indiana constitution, if after reconsideration it again pass both houses, by yeas and nays, by a vote of two-thirds of the members elected to each house, "it shall become a law"; and in the last clause of Section 35, covering a bill laid before the next session of the legislature by reason of the governor's objections, the same language is used.

There is a marked difference of meaning, as we view it, in the language used in the two constitutions.

Section 35 of our constitution emphasizes this difference of meaning. The first clause of that section, requiring every bill passed by the legislature to be presented to and signed by the governor "before it becomes a law," presupposes by the force of the term the subsequent act of presentation and signing. Further along in the section it provides for action

by the legislature upon the objections of the governor, and in the event of certain action "it shall become a law," again, as we believe, presupposing the subsequent act of attestation by the proper officers.

Again, in the last clause of the section, covering the submission of a vetoed bill to the next session of the legislature in the event of certain legislative action, "it shall become a law," presupposing the subsequent mandatory attestation by the officers.

It seems to us that the framers of the constitution used these words with the intention that they should be given the construction we place upon them, and, as we have before stated, emphasized this meaning by declaring in the same section that a bill which remains in the governor's hands beyond a certain limit of time without his approval or disapproval "shall be a law."

Further, this section provides in case final adjournment of the legislature has been had, and the governor does not within the time limited by the section file the bill, with his objections thereto, in the office of the secretary of state, then, in that event, "it shall be a law." In both of these clauses the precise language of the constitution of the State of Indiana is used, while the clause of our constitution covering the case presented uses the language "it shall become a law."

Not only is this construction of Section 35 supported by the language used, but it is in harmony with the construction placed upon it by the legislative department of government since the adoption of the constitution.

We believe it is well settled by the decisions of this court that long continued and contemporaneous construction placed by the coordinate branch of government upon a matter of procedure in such coordinate branch of government should be given great weight. This rule has been followed in a number of cases, and most clearly and forcibly stated in the case of *State* v. *Grey*, 21 Nev. 378, 32 Pac. 190.

In the case of *Dayton Mining Co.* v. *Seawell*, 11 Nev. 399, Justice Hawley, discussing this matter, uses the following language: "But in this connection it must, as we think, be admitted that, although the action of the legislature is not

final, its decision upon this point is to be treated by the courts with the consideration which is due to a coordinate department of the state government, and in case of a reasonable doubt as to the meaning of the words the construction given to them by the legislature ought to prevail."

Commencing with the first session of the legislature after the adoption of the constitution, and continuing down to the nineteenth session, in 1899, in every instance, with possibly one exception, when legislative action was taken upon vetoed bills, and such bills were passed over the veto, the legislature by its act of attestation has construed Section 35 as we construe it. In the first session a large number of bills were returned to the legislature with the governor's objections, and in every instance after passage over his objections they were again attested by the officers named in Section 18 of the constitution, two of whom (the president of the senate and the speaker of the assembly) were fresh from the convention which framed the constitution.

The Supreme Court of the United States, we believe, has even gone further, and in the case of *Field* v. *Clark*, 143 U. S. 649, has approved the doctrine laid down in the case of *State* v. *Swift*, notwithstanding the federal constitution contains no provision expressly requiring enrolled bills which have passed Congress to be attested by the signatures of the presiding officers of the two houses, and bases its conclusion upon the usage, orderly conduct of legislative proceedings, and the rules under which Congress has acted since the organization of the government.

The relator further contends that the construction placed upon these sections by the legislature is without force, for the reason that the officers have inserted over their signature, in many instances, a history of the action taken, and have not uniformly placed their attestation upon the face of the bill. It is sufficient to say in answer to this contention that we are not willing to declare that, because of an abundance of precaution manifested by the officers, their work should fail; neither are we willing to sacrifice the substance of the constitution to a mere matter of form, when form is not the essence.

For the reasons given, we are clearly of the opinion that the peremptory writ should be denied.

Belknap, J.:    I concur.

Fitzgerald, J.:    I dissent.